IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MGE UPS SYSTEMS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| POWER MAINTENANCE | § | CIVIL ACTION NO. 4-04CV-929-Y |
| INTERNATIONAL, INC., | § | |
| GENERAL ELECTRIC COMPANY, | § | |
| GE INDUSTRIAL SYSTEMS, INC., | § | |
| GE CONSUMER & INDUSTRIAL, INC., | § | |
| POWER PROTECTION SERVICES, | § | |
| LLC, and BILL WILKIE, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC.
AND GENERAL ELECTRIC COMPANY'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
AND SUPPLEMENTAL BRIEF IN SUPPORT**

Joseph F. Cleveland, Jr.
State Bar No. 04378900
Richard H. Gateley
State Bar No. 07752500
J. Heath Coffman
State Bar No. 24059591

BRACKETT & ELLIS
A Professional Corporation
100 Main Street
Fort Worth, Texas 76102-3090
Telephone: 817/338-1700
Metro: 817/429-9181
Facsimile: 817/870-2265

ATTORNEYS FOR DEFENDANTS
POWER MAINTENANCE INTERNATIONAL,
INC. AND GENERAL ELECTRIC COMPANY

Defendants Power Maintenance International, Inc. ("PMI") and General Electric Company (collectively "GE/PMI"), after the close of the evidence offered by the plaintiff MGE UPS Systems, Inc. ("MGE") move again for judgment as a matter of law upon the causes of action asserted in MGE's complaint filed in this action, and in support thereof would state as follows:

## I. INTRODUCTION

MGE alleges the following causes of action against GE/PMI: (1) copyright infringement, (2) violation of the Digital Millennium Copyright Act, (3) misappropriation of trade secrets, (4) conversion, (5) unfair competition, and (6) violation of the Texas Theft Liability Act ("TTLA"). Under Federal Rule of Civil Procedure 50(a)(1) the Court may decide these claims as a matter of law without submission to the jury when a party has been fully heard on the issues during a jury trial and the Court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on those issues. After the close of MGE's case, it is clear that this is precisely such a case—MGE has failed to provide legally sufficient evidence on damages for it on any of its claims. Accordingly, GE/PMI respectfully requests that the Court enter a judgment as a matter of law disposing of each of MGE's claims.

## II. STANDARDS FOR JUDGMENT AS A MATTER OF LAW IN A JURY TRIAL

Federal Rule of Civil Procedure 50(a)(1) provides that if a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that

**DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S**     **PAGE 1**
**MOTION FOR JUDGMENT AS A MATTER OF LAW AND BRIEF IN SUPPORT**
**CASE NO. 4:04-CV-929-Y**     289596.1

issue. Fed. R. Civ. Pro 50(a)(1) (West 2008). The motion for judgement as a matter of law may be made at any time before the case is submitted to the jury and must specify the judgment sought and the law and facts that entitle the movant to the judgment. *Id.* 50(a)(2).

A motion for judgment "allows a court to remove 'issue[s]' – claims, defenses or entire cases – from the jury where there is 'no legally sufficient evidentiary basis' to support a particular outcome." *Summers v. Delta Air Lines*, 508 F.3d 923, 928 (9th Cir. 2007). Thus, in order to survive a Rule 50 motion and present a question for the jury, the party opposing the motion must at least establish a conflict in substantial evidence on each essential element of their claim. *Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 583 (5th Cir. 2002). In other words, ***the evidence must be sufficient so that a jury will not ultimately rest its verdict on mere speculation and conjecture.*** *Id.* (emphasis added). A mere scintilla of evidence is insufficient to present a question for the jury. *Hunter v. Knoll Rig & Equipment Mfg. Co.*, 70 F.3d 803, 808 (5th Cir.1995). In determining whether there is a jury question, the court should consider all the evidence presented at trial in the light most favorable to the non-moving party. *Anthony*, 284 F.3d at 583.

### IV. MGE HAS FAILED TO PROVIDE LEGALLY SUFFICIENT EVIDENCE OF REASONABLE ROYALTY DAMAGES

#### A. Michael O'Brien Failed to Apply an Objective Reasonable Royalty Analysis.

The calculation of a reasonable royalty for a copyrighted work is determined by what a willing buyer would have been reasonably required to pay a willing seller as a licensing fee for the actual use of the copyrighted material made by the infringers on the occasions in question. *On Davis v. The Gap, Inc.*, 246 F.3d 152, 164-172 (2nd Cir. 2001); *Straus v. DVC Worldwide*, 484 F.

Supp.2d 620, 648 (S.D. Tex. 2007). A reasonable royalty is not concerned with "what the owner would have charged, but rather what is the fair market value." *Davis,* 246 F.3d at 166. The fair market value is the value resulting from the negotiation between a willing buyer and a willing seller for a license for the use the infringer made, not the highest use for which the plaintiff might license. *Id.* at 166 and n. 5; *Country Road Music, Inc. v. MP3.com, Inc.*, 279 F. Supp.2d 325, 331 (S.D.N.Y. 2003).

MGE, however, has put on no evidence of a reasonable royalty. Instead, it has offered the testimony of its corporate representative Michael O'Brien as to what MGE would have demanded to keep third party service providers from competing against MGE. In other words, O'Brien is doing the same thing Dr. Prescott did—he is looking only at MGE's side of a hypothetical negotiation without giving any deference to GE's side or what GE would have done. O'Brien, like Dr. Prescott, testified about what MGE would have charged, not what a willing buyer and willing seller would have negotiated. Further, this analysis completely contradicts the final *Georgia-Pacific* factor—a reasonable royalty is not what MGE would have demanded to keep out competition, it is what a prudent licensee—who desires as a business proposition, to obtain a license for the software and data disk—would have been willing to pay as a licensing fee and yet been able to make a reasonable profit and ***which amount would have been acceptable by a prudent seller who was willing to grant a license.*** *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (D.C.N.Y. 1970). Thus, O'Brien's testimony is legally insufficient on its face.

Furthermore, a reasonable royalty must be established through an objective analysis. *Mackie v. Rieser*, 296 F.3rd 909, 917 (9th Cir. 2002). It cannot be based on "undue speculation." *Wall*

**DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
MOTION FOR JUDGMENT AS A MATTER OF LAW AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y**

PAGE 3

289596.1

*Data, Inc. v. Los Angeles Sheriff's Dept.*, 447 F.3d 769, 786 (9th Cir. 2006); *see also Alcatel U.S.A., Inc. v. Cisco Systems, Inc.*, 239 F.Supp.2d 660, 669 (E.D. Tex. 2002) ("while . . . some degree of speculation is inherent in calculating a suppositious licensing agreement between two parties that has never occurred, this hypothetical construct . . . must contain some degree of certitude."). O'Brien's testimony, however, is nothing but subjective speculation. There is no analysis. There are no calculations. As O'Brien testified: it's "just a nice round number."

### B. O'Brien's "Reasonable Royalty" is unreasonable on its face.

Calculations of reasonable royalties risk abuse because "[o]nce the defendant has infringed, the owner may claim unreasonable amounts as to the license fee . . . ." *On Davis v. The Gap, Inc.*, 246 F.3d at 166. "[R]easonable license fees are not intended be a windfall for a plaintiff." *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 346, 358 (S.D.N.Y. 2003). Thus, as an extension of the requirement that a reasonable royalty analysis must be objective, courts also require that it be reasonable. *Id.* ("An indispensable component of a reasonable license fee is, quite obviously, that it be reasonable."); *Alcatel USA, Inc. v. Cisco Systems, Inc.*, 239 F. Supp. 2d 660, 667 (E.D. Tex. 2002) ("the method [of calculating damages] does not permit the recovery of a simple royalty, but only a reasonable one").

MGE's royalty of $24-25 million per year is what O'Brien claims is the least MGE would have accepted to license the software. In fact, O'Brien candidly admitted that GE/PMI would never have been able to pay such a royalty because MGE's sole basis for the $24 million royalty would be to "not have third party competitors." Further, GE/PMI never had service revenues of anywhere near that amount. In fact, O'Brien's royalty is actually an increase from Dr. Prescott's royalty and Dr.

Prescott's royalty would have exceeded GE/PMI's highest total annual service <u>revenue</u> figure by 460% and would leave GE/PMI with no profit whatsoever.

C.     **O'Brien Failed To Calculate His "Reasonable Royalty" Based On GE's Actual Use**

A reasonable royalty analysis measures the fair market value of the copyrighted work—i.e., the value resulting from the negotiation between a willing buyer and a willing seller for a license for the ***actual use*** the infringer made, not the highest use for which the plaintiff might license.[1] In *Wall Data Inc. v. Los Angeles County Sheriff's Dept*, 447 F.3d 769, 786-87 (9th Cir. 2006), the Ninth Circuit explained how a jury calculates this fair market value: It multiplies the number of times that the defendant infringed the copyrighted work by the hypothetical licensing fee.

O'Brien's testimony does none of that. In fact, the Court questioned Mr. O'Brien on this very point:

> The Court: The little bit of mathematician in me says, I wonder who much that would be per licence. So I divided 80 into 240 and I get three, and then you carry the zeroes out and that's 300,000. Does that sound right to you.
>
> The Witness: I was really more treating it as a lump sum. 82 requested, that would represent an overwhelming competitive disadvantage to us.
>
> The Court: Right. And I guess I'm jumping the gun a little bit because I don't see how that's helpful to us in figuring your damages unless it's done – because nobody got 80. Nobody got 82. Nobody got 500.

Just like Dr. Prescott's calculation, O'Brien's testimony makes it ***impossible*** for a jury to determine reasonable royalty damages: The jury has no hypothetical royalty rate by which it can multiply the actual number of times that GE/PMI may have infringed on MGE's copyrighted work.

---

[1] *On Davis v. The Gap, Inc.*, 246 F.3d 152 at 166 & n.5; *Country Road Music v. MP3.com*, 279 F. Supp.2d 325, 331 (S.D.N.Y. 2003).

Instead, the jury has a lump sum $24 million royalty that it must apply regardless of whether the software was used one time or a million times. Thus, Dr. Prescott's method of calculation renders his opinion completely useless for a jury. It invites the jury to guess or speculate, in essence giving the jury no guidance whatsoever.

### D.   O'Brien Failed To Apply Any Analysis to his "Reasonable Royalty"

Not once in his testimony did O'Brien mention analyzing any of the fifteen reasonable royalty factors outlined in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (D.C.N.Y. 1970). In fact, O'Brien's so-called royalty is not based on any analysis other than what O'Brien believes as the cost of "selling the business." The use of the price of a business as a basis for a reasonable royalty was rejected in *Alcatel USA, Inc. v. Cisco Systems, Inc.,* 239 F. Supp. 2d 660 (E.D. Tex 2002). In *Alcatel*, plaintiff's reasonable royalty expert opined that a proper reasonable royalty for misappropriated trade secrets would be based on the market value of the infringing business. *Id.* at 669. The court rejected this analysis, though, reasoning that it "contravenes fundamental notions of fairness." *Id.* For instance, the analysis failed to apportion the misappropriated trade secrets from the value of the rest of the business; instead it attributed the entire value of the business to the value of the trade secrets. *Id.* at 670. Second, this amount would not have left the infringer with any reasonable profit. *Id.* at 670 n. 9. Third, the analysis was based on too many assumptions to make the royalty reasonable. *Id.* And, most importantly, "***no case . . . holds that the acquisition price of a company can provide the measure of a reasonable royalty in the absence of lost profits.***" *Id.* at 672 (emphasis added).

Similarly, O'Brien's analysis did nothing to apportion the value of any misappropriated trade

**DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S**
**MOTION FOR JUDGMENT AS A MATTER OF LAW AND BRIEF IN SUPPORT**
**CASE NO. 4:04-CV-929-Y**

**PAGE 6**
289596.1

secrets, a point the court noted when it said that "even assuming your hit parade is correct, you wouldn't need 500 licenses to service – to make 500 service calls." Instead, O'Brien just simply assumes that 500 licenses or 82 licenses would be what was required. Again, the amount he opined, either $24 million or $75 million, would not leave GE/PMI's service business with any reasonable profit. There is simply no basis for the using the hypothetical acquisition price of MGE's service business as a reasonable royalty.

### E. O'Brien Failed to Apply any Analysis for the Misappropriated Trade Secrets

O'Brien offered no analysis of a royalty for MGE's trade secrets, simply saying that his analysis would be the same as his analysis for the reasonable royalty for the software.

## V. CONCLUSION

For the reasons stated, Defendants Power Maintenance International, Inc. and General Electric Company respectfully request this Court to grant its renewed motion for judgment as a matter of law, and enter such other and further relief to which they may show themselves justly entitled.

**DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
MOTION FOR JUDGMENT AS A MATTER OF LAW AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y**

PAGE 7
289596.1

Respectfully submitted,

/s/ Joseph F. Cleveland, Jr.
Joseph F. Cleveland, Jr.
State Bar No. 04378900
Richard H. Gateley
Texas State Bar No. 07752500
J. Heath Coffman
Texas State Bar No. 24059591

BRACKETT & ELLIS
A Professional Corporation
100 Main Street
Fort Worth, TX  76102-3090
Telephone: 817/338-1700
Facsimile:  817/870-2265

ATTORNEYS FOR DEFENDANTS
POWER MAINTENANCE
INTERNATIONAL, INC. AND
GENERAL ELECTRIC COMPANY AND