IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MGE UPS SYSTEMS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | |
| | § | |
| POWER MAINTENANCE | § | CIVIL ACTION NO. 4-04CV-929-Y |
| INTERNATIONAL, INC., | § | |
| GENERAL ELECTRIC COMPANY, | § | |
| GE INDUSTRIAL SYSTEMS, INC., | § | |
| GE CONSUMER & INDUSTRIAL, INC., | § | |
| POWER PROTECTION SERVICES, | § | |
| LLC, and BILL WILKIE, | § | |
| | § | |
| Defendants. | § | |

---

**DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC.
AND GENERAL ELECTRIC COMPANY'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW
OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL
AND BRIEF IN SUPPORT**

---

Joseph F. Cleveland, Jr.
State Bar No. 04378900
Richard H. Gateley
State Bar No. 07752500
J. Heath Coffman
State Bar No. 24059591

BRACKETT & ELLIS
A Professional Corporation
100 Main Street
Fort Worth, Texas  76102-3090
Telephone: 817/338-1700
Metro: 817/429-9181
Facsimile:  817/870-2265

ATTORNEYS FOR DEFENDANTS
POWER MAINTENANCE INTERNATIONAL,
INC. AND GENERAL ELECTRIC COMPANY

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  STANDARDS FOR RENEWED MOTION FOR JUDGMENT AS
      A MATTER OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   GROUNDS FOR RENEWED MOTION FOR JUDGMENT . . . . . . . . . . . . . . . . . . . . . 5

      A.    Legally Insufficient Evidence of Damages . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      B.    Statute of Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      C.    Copyright Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      D.    Unfair Competition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      E.    Misappropriation of Trade Secrets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V.    ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.    Judgment as a Matter of Law Should Be Granted Now Because At The
            Time MGE Rested Its Case, It Had Failed to Introduce Legally Sufficient
            Evidence of Its Alleged Damages, And Thus GE/PMI Was Entitled to
            Judgment in Their Favor At That Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            1.    MGE Failed to Introduce Legally Sufficient Evidence of
                  GE/PMI's Net Profits to Sustain its Claims of Misappropriation
                  of Trade Secrets and Unfair Business Competition . . . . . . . . . . . . . . . . . 9

            2.    MGE Failed to Prove a Causal Link Between Its Alleged
                  Damages and GE/PMI's Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            3.    As a Matter of Law, MGE Failed to Prove Its Alleged Damages to
                  Sustain Its Copyright Infringement Claim . . . . . . . . . . . . . . . . . . . . . . . 15

i

B.    Alternatively, There Is No Legally Insufficient Evidence to Support
      the Jury's Damage Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

      1.    No Legally Sufficient Evidence Supports the Jury's $4.6 Million
            Award Since that Amount Far Exceeds GE/PMI's Net Profits
            Earned from Servicing the MGE UPS Equipment at Issue. . . . . . . . . . . 29

      2.    MGE Presented Legally Insufficient Evidence to Sustain a
            Damage Award Beyond the Five Instances of Admitted Use
            of the Software . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

      3.    Alternatively, MGE Should Not Be Allowed to Recover the Same
            Damages Twice for the Same Injury . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

C.    MGE's Claims Occurring Before December 17, 2001 are Barred by the
      Statute of Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

D.    MGE is Not Entitled to a Permanent Injunction . . . . . . . . . . . . . . . . . . . . . . . . 38

E.    MGE is Barred from Recovering its Attorneys' Fees . . . . . . . . . . . . . . . . . . . . . 40

F.    There is Legally Insufficient Evidence to Sustain the Jury's Finding that
      MGE's Software Qualifies for Copyright Protection . . . . . . . . . . . . . . . . . . . . . 41

      1.    MGE's Software Is Functional and Therefore Ineligible for
            Copyright Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

      2.    MGE's Software Is Not Copyrightable Because it Is Functional
            and It Is Nothing More than a Procedure, Process or Method of
            Operation Needed to Operate and Maintain MGE UPS Equipment . . . . 43

      3.    The Doctrines of Merger and *Scenes a Faire* Exclude MGE's
            Software From Copyright Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

      4.    MGE's Software Contains No Trace of Originality . . . . . . . . . . . . . . . . 48

G.    MGE Cannot Recover on Its Misappropriation of Trace Secrets Claim . . . . . . . 51

      1.    MGE's Misappropriation of Trade Secrets Claim Fails Because
            MGE Failed to Keep its Trade Secrets Secret . . . . . . . . . . . . . . . . . . . . 51

2.    MGE's Trade Secrets Claim Fails Because MGE Failed to Produce Sufficient Evidence that GE/PMI Acquired any Trade Secrets by Improper Means . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

H.    MGE's Claim For Unfair Competition for Misappropriation of MGE's Software is Preempted by the Copyright Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

VI.    MOTION FOR NEW TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

VII.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE**

02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 399 F.Supp.2d 1064 (N.D. Cal. 2005) . . . . 12

Advocare Int'l, LP v. Horizon Laboratories, Inc., No. 06-11157,
    2008 WF 1115241 (5th Cir. April 11, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Aitken, Hazen, Hoffman, Miller, PC v. Empire Const. Co.,
    542 F.Supp. 252 (D. Neb. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Alcatel USA, Inc. v. DGI Techs., Inc., 166 F.3d 772 (5th Cir.1999) . . . . . . . . . . . . . . . 9, 54-56

Aldridge v. The Gap, Inc., 866 F.Supp. 312 (N.D. Tex. 1994) . . . . . . . . . . . . . . . . . . . . . . . . 56

American Alloy Steel, Inc. v. Armco, Inc., 777 S.W.2d 173
    (Tex. App.–Houston [14th Dist.] 1989 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Amigo Broadcasting, LP v. Spanish Broadcasting System, Inc., No. 06-50748,
    2008 WL 725789 (5th Cir. March 19, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 34

Andreas v. Volkswagen of Amer., Inc., 336 F.3d 789 (8th Cir. 2003) . . . . . . . . . . . . . . . 17, 29

Anthony v. Chevron USA, Inc., 284 F.3d 578 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . 3, 15

Argubright v. Beech Aircraft Corp., 868 F.2d 764 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . 4

Atari Games Corp. v. Nintendo of Am., Inc., Nos. 88-4805 & 89-0027,
    1993 WL 207548, (N.D. Cal. May 18, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 46, 47

Atkinson v. Anadarko Bank & Trust Co., 808 F.2d 438 (5th Cir. 1987) . . . . . . . . . . . . . . . . . 34

Baker v. Selden, 101 U.S. 99 (1879) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

BDT Prods., Inc. v. Lexmark Int'l, Inc., 274 F. Supp. 2d 880
    (E.D. Ky. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

Blase Industries Corp. v. Anorad Corp., 442 F.3d 235 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . 7

Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir.1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Bonner v. Dawson, 404 F.3d 290 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 28, 29

Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514 (4th Cir. 2003) . . . . . . . . . . . 21

Brady v. Southern Railway Co., 320 U.S. 476 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Broadcast Music, Inc. v. Xanthas, Inc., 855 F.2d 233 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . 23

Brown Bag Software v. Symantec Corp.,
    960 F.2d 1465, 1473 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

Budget Cinema, Inc. v. Watertower Assocs., 81 F.3d 729 (7th Cir.1996) . . . . . . . . . . . . . . . . 40

Burkhart Grob Luft und Raumfahrt Gmbh & Co. KG v. E-Systems, Inc.,
    257 F.3d 461 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Burndy Corp. v. Teledyne Industries, Inc., 584 F.Supp. 656 (D.C. Conn. 1984) . . . . . . . . . . . . 8

Carbo Ceramics, Inc. v. Keefe, 166 Fed. Appx. 714 (5th Cir. 2006) . . . . . . . . . . . . . . . 7, 8, 12

Carson v. Dynegy, Inc., 344 F.3d 446 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reports, Inc.,
    44 F.3d 61, 68 (2d Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693 (2nd Cir. 1992) . . . . . 43, 44, 46, 47, 49

Daboub v. Gibbons, 42 F.3d 285 (5th Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Dolori Fabrics, Inc. v. Limited, Inc., 662 F.Supp. 1347 (S.D.N.Y. 1987) . . . . . . . . . . . . . . . . . 30

Donald v. Zack Meyer's T.V. Sales & Serv., 426 F.2d 1027, 1031 (5th Cir. 1970) . . . . . . . . . . 50

Door Control Services, Inc. v. Besam Automated Entrance Systems, Inc.,
    61 Fed. Appx. 121, 2003 WL 342351 (5th Cir. February 5, 2003) . . . . . . . . . . . . . . . . 14

Duncan v. Lisenby, 912 S.W.2d 857 (Tex. App–Houston [14th Dist.] 1995, no writ) . . . . . . . . 37

E.I. de Pont deNemours & Co. v. Christopher, 431 F.2d 1012 (5th Cir. 1970) . . . . . . . . . . . . . 52

Elcor Chemical Corp. v. Agri-Sul, Inc., 494 S.W. 2d 204
    (Tex. Civ. App.–Dallas 1973, writ refused n.r.e.) . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

Eng'g Dynamics, Inc. v Structural Software, Inc., 26 F.3d 1335 (5th Cir. 1994) . . . . . . . 18, 45, 47

Estate of Vane v. The Fair, Inc., 849 F.2d 186 (5th Cir. 1988) . . . . . . . . . . . . . 16, 19, 20, 23, 29

Evans v. Ford Motor Co., 484 F.3d 329 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Feist Publ., Inc. v. Rural Tel. Serv. Co., 499 U.S. 340 (1991) . . . . . . . . . . . . . . . . . . . . 45, 48-50

Flowers v S. Reg'l Physician Services, Inc., 247 F.3d 229 (5th Cir. 2001) . . . . . . . . . . . . . . . . . 8

Foradori v. Harris, No. 06-60030, 2008 WL 853559 (5th Cir. Apr. 1, 2008) . . . . . . . . . . . . . . . 3

Ford v. Cimarron Ins. Co., Inc., 230 F.3d 828 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Foreman v. Babcock & Wilcox Co., 117 F.3d 800 (5th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . 4

Foxtrap, Inc. v. Foxtrap, Inc., 671 F.2d 636 (D.C. Cir.1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505 (9th Cir. 1985) . . . . . . . . 18, 30

Gates Rubber Co. v. Bando Chem. Indus., 9 F.3d 823 (10th Cir. 1993) . . . . . . . . . . . . . 43, 44, 47

General Universal Systems, Inc. v. HAL, Inc., 500 F.3d 444 (5th Cir. 2007) . . . . . . . . . . . . . . . 36

Great Pines Water Co., Inc. v. Liqui-Box Corp., 203 F.3d 920 (5th Cir. 2000) . . . . . . . . . . . . . . 8

Harolds Stores, Inc. v. Dillard Dept. Stores, Inc., 82 F.3d 1533 (10th Cir.1996) . . . . . . . . . . . 39

Haynes & Boone v. Bowser Bouldin, Ltd., 896 S.W.2d 179 (Tex. 1995) . . . . . . . . . . . . . . . . . 12

Houston Mercantile Exchange Corp. v. Dailey Petroleum Corp.,
     930 S.W.2d 242 (Tex. App.–Houston [14th Dist.] 1996, no writ) . . . . . . . . . . 11, 12, 14

Hunter v. Knoll Rig & Equip. Mfg. Co., 70 F.3d 803 (5th Cir.1995) . . . . . . . . . . . . . . . . . . . . . 4

Interox Am. v. PPG Indus., Inc. 736 F.2d. 194 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . 53

Invicta Plastics (USA) Ltd. v. Mego Corp., 523 F.Supp. 619 (S.D.N.Y.1981) . . . . . . . . . . . . . . 9

Keg Techs., Inc. v. Laimer, 436 F.Supp.2d 1364 (N.D. Ga. 2006) . . . . . . . . . . . . . . . . . . . . . . . 8

Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51, 53

King Empire, Inc. v. Milan Courtyard Homes, Ltd., 173 F. Supp. 2d 649 (S.D. Tex. 2001) . . . 36

Leland Med. Ctrs., Inc. v. Weiss, No. 4:07cv67, 2007 WL 2900599
    (E.D. Tex. Sept. 28, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Lexmark Int'l, Inc. v. Static Control Components, Inc., 387 F.3d 522
    (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41-43, 46-48

Litton Sys., Inc. v. Ssangyong Cement Indus. Co., No. C-89-3832 VRW,
    1993 WL 317266 (N.D. Cal. Aug 19, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Lotus Dev. Corp. v. Borland Int'l, Inc., 49 F.3d 807 (1st Cir. 1995) . . . . . . . . . . . . 43, 44, 49, 50

Love v. Kwitny, 772 F.Supp. 1367 (S.D.N.Y. 1991),
    aff'd, 963 F.2d 1521 (2nd Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Lowry's Reports, Inc. v. Legg Mason, Inc., 271 F.Supp. 2d 737 (D. Md. 2003) . . . . . . . . . . . . 21

Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.,
    630 F.2d 250 (5th Cir.1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Mackie v. Rieser, 296 F.3d 909 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

Mackie v. Rieser, 296 F.3d 909 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Makedwde Pub. Co. v. Johnson, 37 F.3d 180 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . 36

Mazer v. Stein, 347 U.S. 201 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 43

McCaleb v. Fox Film Corp., 299 F. 48 (5th Cir. 1924) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Metallurgical Indus., Inc. v. Fourtek, Inc., 790 F.2d 1195 (5th Cir. 1986) . . . . . . . . . . . . . 51, 54

Morris v. Business Concepts, Inc., 259 F.3d 65 (2nd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . 40

Munoz v. State Farm Lloyds of Texas, No. 06-40827, 2008 WL 836396
    (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

New Amsterdam Cas. Co. v. Texas Indus., Inc., 414 S.W.2d 914 (Tex. 1967) . . . . . . . . . . . . . 41

On Davis v. The Gap, 246 F.3d 152 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 17, 20, 21

Peterson v. Hager, 714 F.2d 1035 (10th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 24

Pham v. Jones, No. Civ.A.H-05-2027, 2006 WL 1342826
    (S.D. Tex. May 13, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Pizani v. M/V Cotton Blossom, 669 F.2d 1084 (5th Cir.1982) . . . . . . . . . . . . . . . . . . . . . . 7, 9, 16

Playboy Enterprises, Inc. v. Webbworld, Inc., 991 F.Supp. 543 (N.D. Tex. 1997),
    aff'd, 168 F.3d 486 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 39

Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700 (9th Cir. 2004) . . . . . . . . . . . . . 17, 18, 21

Powell v. Penhollow, NO. 06-10760, 2007 WL 4513119
    (5th Cir. Dec 21, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 29

Prunty v. Arkansas Freightways, Inc., 16 F.3d 649 (5th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . 7

Recursion Software, Inc. v. Interactive Intelligence, Inc.,
    425 F. Supp. 2d 756 (N.D. Tex. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000) . . . . . . . . . . . . . . . . . . . . . 4

Rocking Chair Enterprises, L.L.C. v. Macerich SCG Ltd. Partnership,
    407 F.Supp.2d 1263 (W.D. Okla. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Ruckelshaus v. Monsanto Co., 467 U.S. 986 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51, 53

Schmueser v. Burkburnett Bank, 937 F.2d 1025 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . 5, 8

Sefton v. Webbworld, Inc., No. 3:00-CV-0042–Att, 2003 WL 21406292
    (N.D. Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Sega Enters. Ltd. v. Accolade, Inc., 977 F.2d 1510 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . 41

Servicios-Expoarma, C.A. v. Indus. Mar. Carriers, Inc.,
    135 F.3d 984 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 37

Sheldon v. Metro-Goldwyn Pictures Corp., 309 U.S. 390 (1940) . . . . . . . . . . . . . . . . . . . . . . 15

Silor v. Romero, 868 F.2d 1419 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 17

Starcrest Trust v. Gerry, 926 S.W.2d 343 (Tex. App–Austin 1996, no writ) . . . . . . . . . . . . . . 37

Straus v. DVC Worldwide, Inc., 484 F.Supp.2d 620 (S.D. Tex. 2007) . . . . . . . . . . . . . . . . 15, 21

Synercom Tech., Inc. v. Univ. Computing Co., 474 F. Supp. 37
    (N.D. Tex. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Szczepanik v. First S. Trust Co., 883 S.W.2d 648 (Tex. 1994) . . . . . . . . . . . . . . . . . . . . . . . 12, 14

Taco Cabana Int'l, Inc. v. Two Pesos, Inc., 932 F.2d 1113 (5th Cir. 1991) . . . . . . . . 9, 51, 53, 54

Taylor Publ'g Co. v. Jostens, Inc., 216 F.3d 465 (5th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . 55

Taylor v. Meirick, 712 F.2d 1112 (7th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

Thoroughbred Software Int'l., Inc. v. Dice Corp., 488 F.3d 352 (6th Cir. 2007) . . . . . . 16, 23, 29

Titus v. Wells Fargo Bank & Union Trust Co., 134 F.2d 223 (5th Cir. 1943) . . . . . . . . . . . 37, 38

Tompkins v. Cyr, 202 F.3d 770 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 156 (1975) . . . . . . . . . . . . . . . . . . . . . 49

U.S. Sporting Prods. v. Johnny Stewart Game Calls, Inc., 865 S.W.2d 214
    (Tex. App.—Waco 1993, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

United States ex rel. Gray-Bar Elec. Co. v. J.H. Copeland & Sons Constr., Inc.,
    568 F.2d 1159 (5th Cir.1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. W.T. Grant Co., 345 U.S. 629 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Univ. Computing Co. v. Lykes-Youngstown Corp., 504 F.2d 518 (5th Cir.1974) . . . . . . . . . 7, 8

Univ. of Colorado Found., Inc. v. Am. Cyanamid Co.,
    196 F.3d 1366 (Fed. Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Vadie v. Mississippi State Univ., 218 F.3d 365 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 5

Vane v. The Fair, Inc., 676 F.Supp. 133 (E.D. Tex. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Veeck v. S. Bldg. Code Cong. Int'l, Inc., 293 F.3d 791 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . 42

Viazis v. Am. Ass'n of Orthodontists, 314 F.3d (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 4

Vuitton et Fils, S.A. v. Crown Handbags, 492 F.Supp. 1071 (S.D.N.Y.1979) . . . . . . . . . . . 9, 33

Walker v. Forbes, Inc., 28 F.3d 409 (4th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

ix

Warren Publ'g, Inc. v. Microdos Data Corp., 115 F.3d 1509, 1519 n. 27 (11ᵗʰ Cir.1997) . . . . . . 46

White v. Arco/Polymers, Inc., 720 F.2d 1391 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Wissman v. Boucher, 240 S.W.2d 278 (Tex. 1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51, 53

**STATUTES, CODES, RULES, AND REGULATIONS**

17 U.S.C. § 102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

17 U.S.C. 102(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 48

17 U.S.C. 102(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

17 U.S.C. § 102(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42-44, 46

17 U.S.C. § 412 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

17 U.S.C. § 502(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

17 U.S.C. § 504(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18, 29

17 U.S.C. § 507(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

U.S.C. 1701 § 102(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Fed. R. Civ. P. 50 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 50(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 15

Fed. R. Civ. P. 50(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 50(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

Tex. Civ. Prac. & Rem. Code § 16.010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

U.S. Cons. art. I, § 8, cl. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

**OTHER AUTHORITIES**

3 Nimmer, Melville B. & David Nimmer, *Nimmer On Copyright* § 14.06[B] (1995) . . . . . . . . 39

4 Nimmer, Melville B. and David Nimmer, *Nimmer on Copyright* § 14.03[A] (2002) . . . . 15, 18

x

Ben Debba, Leila, *Backdoor Non-Competes in Texas: Trade Secrets*,
        36 St. Mary's L.J. 483 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Frost & Sullivan – North American UPS Markets – End-User Study (2003) . . . . . . . . . . . . 22, 27

Graves, Charles Tait, *The Law of Negative Knowledge: A Critique*,
        15 Tex. Intel. Prop. L.J. 387 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

H.R.Rep. No. 1476, 94th Cong., 2d Sess. 54 (1976), *reprinted in*
        1976 U.S. Code & Admin. News 5659, 5667 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Hudson, James E., *A Survey of Texas Unfair Competition--Tort of Common Law*
        *Misappropriation*, 50 Baylor L. Rev. 921 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Restatement (First) of Torts § 647 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Restatement of Torts § 757 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

xi

Defendants Power Maintenance International, Inc. ("PMI") and General Electric Company (collectively "GE/PMI") move for judgment as a matter of law on plaintiff MGE UPS Systems, Inc.'s ("MGE") claims for copyright infringement, misappropriation of trade secrets, and unfair competition, or in the alternative move for a new trial, and in support thereof would state as follows:

## I. INTRODUCTION

On April 21, 2008, the jury returned a verdict awarding MGE $4.6 million in damages against GE/PMI based upon the following claims: (1) copyright infringement, (2) misappropriation of trade secrets, and (3) unfair competition. Under Federal Rule of Civil Procedure 50(b), judgment as a matter of law is proper where a court determines there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue. This is precisely the case here – MGE failed to introduce a legally sufficient evidentiary basis for a jury to find for it on any of these three claims. As MGE's counsel candidly admitted, "[r]eally, what this all boils down to, your Honor, it boils down to the damages issues and I concede I'm in trouble." Because MGE failed to prove any damages, GE/PMI respectfully requests that the Court enter a judgment as a matter of law dismissing MGE's claims.

## II. PROCEDURAL HISTORY

On April 1, 2008, the Court called the above-referenced case to trial and began a three-week jury trial. In its case, MGE originally sought $101 million in damages for all its claims relying solely on its one and only damages expert, Laurence Prescott, Ph.D. ("Prescott").[1]  In its case-in-chief, MGE called Prescott to testify about MGE's alleged lost profits and reasonable royalty damages.

---

[1] See MGE's Amended Disclosures dated February 8, 2008 [Doc. No. 291 (Exhibit A at 17, ¶ C)] (In answer to the computation of any category of damages claimed by MGE, MGE stated: "Please see the supplemental expert report of Laurence Prescott, Ph.D. previously produced to defendants on November 30, 2007").

Defendants had earlier filed *Daubert* objections to Prescott's testimony [Doc. No. 376, 377]. The Court, however, carried defendants' objections and permitted Prescott to testify. On April 10, 2008, the Court granted defendants' motion to strike the testimony of Prescott [Doc. No. 405] and instructed the jury to disregard the entirety of his testimony. Thereafter, MGE called its final witness, Michael O'Brien, and rested its case.

After MGE rested, the Court considered arguments on defendants' motions for judgment as a matter of law. [Doc. Nos. 402; 405]. The following day, the Court granted defendant Bill Wilkie's oral motion for judgment as a matter of law, but denied all other defendants' motions for judgment. [Doc. No. 407].

On April 15, 2008, GE/PMI filed an amended motion for judgment as a matter of law and supplemental brief [Doc. No. 410] to which MGE responded [Doc. No. 413] and GE/PMI replied [Doc. No. 414]. The following day, the Court heard arguments on GE/PMI's renewed motion and granted it as to the issues of reasonable royalties and statutory damages. [Doc. No. 421]. The remainder of the motion was denied. In denying the motion as to the infringer's profits, the Court indicated that because MGE had not shown a causal nexus as to GE's revenue, GE/PMI was not now required to apportion GE's revenues, only PMI's revenues. (April 16, 2008 Trial Tr. Vol. 12:42-43).

On April 17, 2008, GE/PMI filed a second supplemental motion for judgment and brief in support. [Doc. No. 419]. Before the case was submitted to the jury, the defendants renewed all their motions for judgment as a matter of law. After a hearing, the Court denied the motions and allowed the case to go to the jury.

The jury returned a verdict in favor of MGE in which it found GE/PMI liable for copyright infringement, misappropriation of trade secrets, and unfair business competition and awarded

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 2

290686.1

damages totaling $4,624,000. [Doc. No. 440]. The jury deadlocked on question numbers 18 and 20 relating to punitive damages. MGE, however, accepted the jury's verdict and waived its right to re-trial on punitive damages. [Doc. No. 439]. The Court entered final judgment in accordance with the Court's order at trial and the verdict of the jury on April 28, 2008. [Doc. No. 445]. In the final judgment, the Court ordered that MGE recover from GE/PMI the sum of $4,624,000, entered a permanent injunction, and ordered that all costs of court, including attorneys' fees, be borne by GE/PMI. *Id.*

### III.  STANDARDS FOR RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

GE/PMI previously filed motions for judgment under Federal Rules of Civil Procedure Rule 50(a) and now renew their motions for judgment under Rule 50(b). Under Rule 50(b), "if the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury *subject to the court's later deciding the legal questions raised by the motion.*" Fed. R. Civ. P. 50(b) (emphasis added). The standards for a motion for judgment as a matter of law are the same under Rule 50(a) and Rule 50(b). *Foradori v. Harris*, No. 06-60030, 2008 WL 853559, at *34 n.8 (5th Cir. Apr. 1, 2008); *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 269 n. 22 (5th Cir.1980). To survive a Rule 50 motion and present a question for the jury, the party opposing the motion must at least establish a conflict in substantial evidence on each essential element of its claim. *Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 583 (5th Cir. 2002). In other words, the evidence must be sufficient so that a jury will not ultimately rest its verdict on mere speculation and conjecture. *Id.* A mere scintilla of evidence is

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 3

290686.1

insufficient to present a question for the jury. *Hunter v. Knoll Rig & Equip. Mfg. Co.*, 70 F.3d 803, 808 (5th Cir.1995).

Following a jury trial, a motion for judgment as a matter of law is a challenge to the sufficiency of the evidence supporting the jury's verdict. *Ford v. Cimarron Ins. Co., Inc.*, 230 F.3d 828, 830 (5th Cir. 2000). The question of sufficiency of the evidence is purely a question of law of which the district court has no discretion. *Lubbock Feed Lots*, 630 F.2d at 269. Accordingly, motion for judgment as a matter of law should be granted if the nonmoving party has failed to present substantial evidence "of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Argubright v. Beech Aircraft Corp.*, 868 F.2d 764, 766 (5th Cir. 1989) (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc)). When assessing the sufficiency of the evidence, the court should allow all reasonable inferences to be drawn in the non-movant's favor, but must consider all evidence in the case, rather than just the evidence favorable to the non-movant. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000); *Evans v. Ford Motor Co.*, 484 F.3d 329, 334 (5th Cir. 2007). The Court should give credence to the "evidence supporting the moving party that is uncontradicted and unimpeached." *Evans*, 484 F.3d at 334. Accordingly, "judgment as a matter of law is proper after a party has been fully heard by the jury on a given issue, and 'there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue.' " *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 804 (5th Cir.1997) (quoting Fed. R. Civ. P. 50(a)).

To defeat a motion for judgment as a matter of law, the non-movant must present substantial evidence opposed to the motion. *Viazis v. Am. Ass'n of Orthodontists*, 314 F.3d 758, 761 (5th Cir.

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y                                      PAGE 4

290686.1

2002); *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 372 n. 21 (5th Cir. 2000). "'If the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes reasonable men could not arrive at a contrary verdict, granting of the motion [ ] is proper.'" *Munoz v. State Farm Lloyds of Texas*, No. 06-40827, 2008 WL 836396 at *4 (5th Cir. 2008) (quoting *Boeing*, 411 F.2d at 374-75). In particular on the issue of damages, if the record contains insufficient evidence to support damages awarded by the jury, the court must enter a take-nothing judgment as to those damages not supported by the evidence. *Schmueser v. Burkburnett Bank*, 937 F.2d 1025, 1030 (5th Cir. 1991) (citing *Silor v. Romero*, 868 F.2d 1419, 1422 (5th Cir. 1989)).

## IV.  GROUNDS FOR RENEWED MOTION FOR JUDGMENT

GE/PMI moves for judgment as a matter of law on the following grounds:

**A.    Legally Insufficient Evidence of Damages**

1.    MGE failed to sustain its burden of proof to introduce legally sufficient evidence of GE/PMI's net profits, and therefore, MGE's misappropriation of trade secrets and unfair competition claims should have been dismissed at the close of Plaintiff's case based upon GE/PMI's Motion for Judgment as a Matter of Law.

2.    MGE failed to sustain its burden of proof to introduce legally sufficient evidence of GE/PMI's gross revenue specifically attributable to the infringement – much less a causal link between any alleged copyright infringement and GE/PMI's net profits – and therefore, its copyright infringement claim should have been dismissed at the close of MGE's case based upon GE/PMI's Motion for Judgment as Matter of Law.

3.    Alternatively, there is legally insufficient evidence supporting the jury's verdict.

4.    Alternatively, MGE did not introduce legally sufficient evidence to sustain a damages award beyond the five instances where the software was admittedly used.

5.    Alternatively, MGE should not be entitled to a double recovery for the same injury.

**B.      Statute of Limitations**

      1.      MGE's recovery of Defendants' profits earned from January 1, 2001 to December 17, 2001 is barred by the statute of limitations.

      2.      MGE's Non-Disclosure Agreement does not constitute a tolling agreement.

**C.      Copyright Infringement**

      1.      The nature of MGE's lockout software renders it ineligible for copyright protection.

**D.      Unfair Competition**

      1.      MGE's claim for unfair competition is preempted by the Copyright Act.

**E.      Misappropriation of Trade Secrets**

      1.      MGE failed to produce legally sufficient evidence that MGE's "trade secrets" were kept secret.

      2.      MGE failed to produce legally sufficient evidence that GE/PMI acquired MGE's trade secrets by improper means.

## V.  ARGUMENT AND AUTHORITIES

**A.      Judgment as a Matter of Law Should Be Granted Now Because At The Time MGE Rested Its Case, It Had Failed to Introduce Legally Sufficient Evidence of Its Alleged Damages, And Thus GE/PMI Was Entitled to Judgment in Their Favor At That Time.**

When MGE rested its case, MGE's only damages expert had been stricken and it had offered no evidence of lost profits. MGE's counsel announced at that time that MGE was only seeking reasonable royalty damages based on the testimony of its corporate representative, Michael O'Brien. Ultimately, the Court granted defendants' motion for judgment on reasonable royalties. MGE then abruptly switched its damages theory and claimed for the first time that MGE was entitled to

---

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 6

290686.1

GE/PMI's net profits.[2]  MGE never presented any evidence of GE/PMI's net profits and, therefore, its claims should have been dismissed at the close of MGE's case based upon GE/PMI's Motion for Judgment as a Matter of Law.  GE/PMI should never have had to proceed to defend against MGE's wholly unsupported claims.

It is a basic concept that damages must be proved by the party seeking them.  *Servicios-Expoarma, C.A. v. Indus. Mar. Carriers, Inc.*, 135 F.3d 984, 995 (5th Cir. 1998); *see also Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 652 (5th Cir.1994) (holding that one who seeks damages must present evidence of those damages); *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 536 (5th Cir.1974) (holding that "only the defendant's actual profits can be used as a measure of damages in cases where profits can be proved . . . .").  A plaintiff cannot present a damage figure without proving that portion to which it is legally entitled.  *Pizani v. M/V COTTON BLOSSOM*, 669 F.2d 1084, 1088 (5th Cir.1982) (refusing to allow plaintiff to present a damage figure where he failed to segregate what was recoverable from what was not); *United States ex rel. Gray-Bar Elec. Co. v. J.H. Copeland & Sons Constr., Inc.*, 568 F.2d 1159, 1161-62 (5th Cir.1978) (holding that the party seeking damages must show the specific amount it is entitled to recover, not just the total amount of damages).  Furthermore, the party seeking damages must adduce evidence from which the jury can reasonably estimate the amount of loss.  *Blase Industries Corp. v. Anorad Corp.*, 442 F.3d 235, 238 (5th Cir. 2006); *see also Carbo Ceramics, Inc. v. Keefe*, 166 Fed. Appx.

---

[2]At all times prior to that time, MGE represented it was only seeking MGE's lost profits or reasonable royalties based on the expert report of Prescott. *See* MGE's Amended Disclosures dated February 8, 2008 [Doc. No. 291 (Exhibit A at 17, ¶ C)] (In answer to the computation of any category of damages claimed by MGE, MGE stated: "Please see the supplemental expert report of Laurence Prescott, Ph.D. previously produced to defendants on November 30, 2007").

**DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S**
**RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR**
**NEW TRIAL AND BRIEF IN SUPPORT**
**CASE NO. 4:04-CV-929-Y**

PAGE 7

290686.1

714, 723 (5th Cir. 2006) (denying damage award where employer failed to provide reliable evidence from which a jury could derive a value for trade secrets misappropriated by former employee); *Great Pines Water Co., Inc. v. Liqui-Box Corp.*, 203 F.3d 920, 922 (5th Cir. 2000) (denying damage award where plaintiff failed to provide any objective evidentiary support from which jury could calculate damages with reasonable certainty); *Univ. Computing Co.*, 504 F.2d at 545 (holding that a plaintiff must introduce evidence "by which the jury can value the rights the defendant has obtained").

MGE was required to prove the amount of its damages with reasonable certainty. *See Schmueser*, 937 F.2d at 1030. Additionally, it was required to prove "that the damages alleged were a reasonably foreseeable result of the wrongdoing in question. *Id.* "If . . . [however] . . . the record contains insufficient evidence to support an award of damages, then judgment n.o.v. [judgment as a matter of law] may be granted as to those damages not supported by the evidence." *Id.*; *cf. Flowers v S. Reg'l Physician Services, Inc.*, 247 F.3d 229, 235 (5th Cir. 2001) (Judgment as a Matter of Law should be granted if "a party has been fully heard on a given issue, and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue.").

These standards are particularly relevant in the infringement and misappropriation context as courts routinely deny a monetary award in those cases when damages are remote or speculative. *Carbo Ceramics*, 166 F. Appx. at 724-25; *see, e.g., Keg Techs., Inc. v. Laimer*, 436 F.Supp.2d 1364, 1370 (N.D. Ga. 2006) (holding that when there is a "paucity" of competent evidence supporting the plaintiff's damages, "the Court is forced to make the difficult decision to deny plaintiffs a monetary award"); *Foxtrap, Inc. v. Foxtrap, Inc.*, 671 F.2d 636, 642 (D.C. Cir.1982) ("any award based on plaintiff's damages requires some showing of actual loss"); *Burndy Corp. v. Teledyne Industries,*

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y                                      PAGE 8

290686.1

*Inc.*, 584 F.Supp. 656, 664 (D.C. Conn. 1984) ("no assessment of damages is authorized if it is not based on actually proven damages"); *Invicta Plastics (USA) Ltd. v. Mego Corp.*, 523 F.Supp. 619, 624 (S.D.N.Y.1981) ("damages will not be awarded in the absence of credible evidence demonstrating injury to the plaintiff from defendant's sales"); *Vuitton et Fils, S.A. v. Crown Handbags*, 492 F.Supp. 1071, 1077 (S.D.N.Y.1979) ("The discretionary award of either damages or profits assumes an evidentiary basis on which to rest such an award. Without such a basis there can be no recovery.").

1.   **MGE Failed to Introduce Legally Sufficient Evidence of GE/PMI's Net Profits to Sustain its Claims of Misappropriation of Trade Secrets and Unfair Business Competition.**

To prevail on its trade secret misappropriation claim, MGE was required to prove that (1) a trade secret existed; (2) GE/PMI acquired the trade secret by improper means; (3) GE/PMI used the secret information without authorization from plaintiff; and (4) MGE suffered damages. *See Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1123 (5th Cir. 1991). To prevail on its unfair competition claim, MGE was required to prove (1) the creation of a product through extensive time, labor, skill and money; (2) the use of that product by GE/PMI in competition with MGE, thereby giving the GE/PMI a special competitive advantage because it was burdened with little or none of the expense incurred by MGE in the creation of the product; and (3) commercial damage to MGE. *See Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 788 (5th Cir.1999). Thus, to prevail on either of these claims, MGE was required to prove damages. As the Fifth Circuit made clear in *Prunty v. Arkansas Freightways, Inc.*, 16 F.3d at 652, "when one of the *prima facie* elements of a

claim is damages and the claimant fails to introduce evidence of those damages, he or she commits a fatal error."

At the time MGE rested its case-in-chief and GE/PMI moved for judgment under Rule 50(a), MGE had committed that fatal error: it never proved any damages. As MGE's counsel candidly admitted at the hearing, "[r]eally, what this all comes down to, your Honor, it boils down to the damages issue, and I concede I'm in trouble." (April 10, 2008 Tr. Trans. at Vol 8:29 [Directed Verdict Motion]). MGE's counsel had good cause for concern given the fact that MGE failed to introduce **any** evidence on the only category of damages that MGE was then seeking, and that the Court had not dismissed – PMI's net profits.

MGE based its entire damages theory on Defendants' Exhibit 37 (DX-37), a one-page bar chart entitled "MGE Total Revenue vs. PMI Total Revenue," showing PMI's annual **gross revenues** from all lines of business from 2001 to 2004 as indicated below:

| | |
|---|---|
| 2001 | $14,681,297 |
| 2002 | $16,348,906 |
| 2003 | $17,105,790 |
| 2004 | $14,054,838. |

At the hearing on Defendants' motion for judgment, the Court closely questioned MGE's counsel about whether DX-37 sufficiently supported PMI's profits from the activity that was the subject matter of the case. MGE's counsel, without any additional evidentiary support, misled the Court into believing that those numbers were in fact limited to PMI's **profits** from the very activity that was at issue in this case. (April 16, 2008 Trial Tr. Vol. 12:9-10 [Directed Verdict Hearing]). In truth, this exhibit does not show PMI's profits. Nor did it even show revenues *specifically attributable* to

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL AND BRIEF IN SUPPORT CASE NO. 4:04-CV-929-Y

PAGE 10

290686.1

the equipment at issue. At most, it only shows PMI's **gross revenues** from servicing a variety of both MGE and non-MGE equipment. By failing to prove PMI's net profits in its case-in-chief, MGE committed a fatal error. This error mandated entry of a take-nothing judgment and a dismissal of MGE's claims at the time MGE rested its case-in-chief.

In *Elcor Chemical Corp. v. Agri-Sul, Inc.*, the only reported Texas case involving the recovery of defendant's profits for a misappropriation of trade secrets claim, the Dallas Court of Appeals held that defendant's profits are a "proper element[] of damages in a case involving the wrongful use of a trade secret" but that the plaintiff could not recover because it had failed to offer any evidence "to show the actual profit made by [defendant]." 494 S.W.2d 204, 214 (Tex. Civ. App.—Dallas 1973, writ refused n.r.e.). Accordingly, the appeals court reversed the trial court's judgment and rendered judgment that the plaintiff "recover no money damages from [defendant]." *Id.* Like the plaintiff in *Elcor*, MGE failed to offer any evidence to show the actual profits made by GE/PMI, much less the profits earned on the MGE equipment at issue that uses the software or technical documentation. Therefore, this Court should have entered a take-nothing judgment and dismissed MGE's misappropriation and unfair competition claims at the close of MGE's evidence.

### 2. MGE Failed to Prove a Causal Link Between Its Alleged Damages and GE/PMI's Conduct.

Furthermore, MGE had the burden to establish a direct causal link between its damages and GE/PMI's use of the software and technical documentation. It never did. In *Houston Mercantile Exchange Corp. v. Dailey Petroleum Corp.*, the Houston Court of Appeals held that the plaintiff in a misappropriation and unfair competition suit could not recover its lost profits for misappropriation

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 11

290686.1

of trade secrets and unfair competition because it failed to establish a direct link between its damages and the alleged misconduct. 930 S.W.2d 242, 248 (Tex. App.—Houston [14th Dist.] 1996, no writ). The court held that it was the plaintiff's responsibility to "produce evidence from which the jury may reasonably infer that the damages sued for have resulted from the conduct of the defendant." *Id.* Thus, the plaintiff should have presented the jury "with pleading and proof that establish[ed] a direct causal link between the damages awarded, the actions of the defendant and the injury suffered." *Id.* (citing *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 181 (Tex. 1995)); *see also Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649-50 (Tex. 1994). In *Houston Mercantile*, the plaintiff's only damage evidence consisted simply of a calculation that multiplied the number of defendants' products in operation by the plaintiff's average monthly profit for its products. 930 S.W.2d at 248. The court held that this was "no evidence" of the plaintiff's damages because not all of the defendants' products were created from the misappropriation or unfair competition. *Id.* Thus, plaintiff failed in its duty to establish "a direct causal link between the damages awarded, the [defendants'] alleged misconduct and the injury suffered." *Id.* MGE failed in exactly the same manner in this case and presented no evidence of its damages because the gross revenue earned by GE/PMI was not all derived from MGE's software or technical documentation.

The Fifth Circuit, other courts, and commentators all agree that a plaintiff must establish both the defendant's profits and the causal link between those profits and the alleged conduct before it can recover anything. *See Carbo Ceramics, Inc. v. Keefe*, 166 Fed. Appx. 714, 725 (5th Cir. 2006) (holding that plaintiff could not recover defendant's profits for its misappropriation of trade secrets claim where there was no evidence of the actual sales enjoyed by the defendant); *02 Micro Int'l Ltd.*

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 12

290686.1

*v. Monolithic Power Sys., Inc.*, 399 F.Supp.2d 1064, 1076-77 (N.D. Cal. 2005) (holding that plaintiff failed to present any reasonable basis to determine unjust enrichment damages in a misappropriation case where only some of the plaintiff's trade secrets were misappropriated, but plaintiff presented only a lump sum figure for the value of all the trade secrets); *Litton Sys., Inc. v. Ssangyong Cement Indus. Co.*, No. C-89-3832 VRW, 1993 WL 317266, at *4 (N.D. Cal. Aug 19, 1993) ("Gains from trade secret theft, in particular, do not sort themselves out neatly from other gains, so calculations may have to focus on what part of a defendant's profits accrued from trade secret theft and what part from the defendant's legitimate activities."); Restatement (First) of Torts § 647 (West 2008) (in a misappropriation of trade secrets case, defendant may only be liable for those net profits that "are earned by him on profitable transactions by means of the conduct which subjects him to liability."); Charles Tait Graves, *The Law of Negative Knowledge: A Critique*, 15 Tex. Intel. Prop. L.J. 387, 412 (2007) ("[T]he plaintiff must prove that the misappropriation was the proximate cause of the injury or enrichment."); Leila Ben Debba, *Backdoor Non-Competes in Texas: Trade Secrets*, 36 St. Mary's L.J. 483, 493 (2005) ("The plaintiff . . . bears the burden of proving with reasonable certainty that the losses incurred are a direct result of the misappropriation or breach of a confidential relationship.").

At the conclusion of its case, MGE had not introduced any evidence of GE/PMI's net profits and certainly not the amount of profits that were linked to GE/PMI's use of the software or technical documentation. Like the plaintiff in *Elcor*, MGE presented no evidence to show the actual net profits made by GE/PMI derived from servicing the MGE UPS equipment at issue as opposed to the gross revenues earned servicing the multitude of other types of equipment MGE does not

**DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S**
**RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR**
**NEW TRIAL AND BRIEF IN SUPPORT**
**CASE NO. 4:04-CV-929-Y**

**PAGE 13**

290686.1

manufacture or service. And like the plaintiff in *Houston Mercantile*, it presented no causal link between GE/PMI's net profits and the use of the software or technical materials to service the MGE UPS equipment at issue in this case. When MGE rested its case, the only evidence introduced to support its damages was the one-page chart (DX-37) showing GE/PMI's total revenues, almost all of which were entirely unrelated to GE/PMI's use of MGE's software and technical documentation. This evidence is insufficient as a matter of law to establish the required direct causal link between the damages awarded, GE/PMI's alleged misconduct, and MGE's injury.

Nor can MGE argue that the jury could somehow discern a net profit figure by piecing together PMI's gross revenues with other testimony or exhibits. In *Door Control Services, Inc. v. Besam Automated Entrance Systems, Inc.*, the Fifth Circuit, applying Texas law in a lost profits case, noted that an injured party "must do more than show that it suffered some lost profits"; rather, "[r]ecovery must be 'predicated on one complete calculation' and 'opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits may be ascertained.'" 61 Fed. Appx. 121, 2003 WL 342351 at *2 (5th Cir. February 5, 2003) (quoting *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994)). Describing this burden as an "onerous" one, the court held that the plaintiff had not met it because it failed to offer one complete calculation on its lost net profits, and, therefore, judgment as a matter of law for defendants was appropriate. *Id.* Similarly, MGE failed to provide any calculation (much less a "complete calculation") of GE/PMI's profits in order to sustain its state law claims. Thus, judgment as a matter of law in GE/PMI's favor was appropriate at the close of MGE's case because there was no evidence of GE/PMI's net profits. Consequently, MGE's claims of misappropriation of trade secrets and

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 14

290686.1

unfair business competition should never have survived GE/PMI's Rule 50(a) motion, much less gone to the jury. *See Peterson v. Hager*, 714 F.2d 1035, 1038 (10th Cir. 1983) ("When . . . a party has failed to present the minimal amount of evidence that would justify sending the case to the jury, the court must act to prevent speculation on legally unfounded claims") (citing *Brady v. Southern Railway Co.*, 320 U.S. 476, 480 (1943)); *see also Anthony*, 284 F.3d at 583 (holding that the evidence must be sufficient so that a jury will not ultimately rest its verdict on mere speculation and conjecture).

### 3.   As a Matter of Law, MGE Failed to Prove Its Alleged Damages to Sustain Its Copyright Infringement Claim.

Infringer's profits – or indirect profits – are a rarely successful form of damages for copyright claims because they are too speculative. *See* 4 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* § 14.03[A] (2002); *see also Mackie v. Rieser*, 296 F.3d 909, 914-916 (9th Cir. 2002); *Straus v. DVC Worldwide, Inc.*, 484 F.Supp.2d 620, 645 (S.D. Tex. 2007); *Rocking Chair Enterprises, L.L.C. v. Macerich SCG Ltd. Partnership*, 407 F.Supp.2d 1263, 1271 (W.D. Okla. 2005) ("Indirect profit awards are relatively rare because courts have found them too speculative."). The statutory authority for infringer's profits is section 504(b) of the Copyright Act, which allows a copyright owner, if successful in a copyright action, to recover "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b) (2008). The purpose of this provision is "to provide just compensation for the wrong, not to impose a penalty by giving to the copyright proprietor profits which are not attributable to the infringement." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 399 (1940). "[L]ike

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 15

290686.1

other damages, [infringer's profits] 'must be based on credible evidence, not speculation.'" *Thoroughbred Software Int'l., Inc. v. Dice Corp.*, 488 F.3d 352, 360 (6th Cir. 2007).

Thus, before GE/PMI's profits can be recovered, the Copyright Act requires a two-step process. First, MGE must "put[] on evidence of Defendants' gross revenue *attributable to the infringement.*" *Powell v. Penhollow*, No. 06-10760, 2007 WL 4513119, at *2 (5th Cir. Dec 21, 2007) (slip copy) (emphasis added); *see also Thoroughbred*, 488 F.3d at 360; *Bonner v. Dawson*, 404 F.3d 290, 294 (4th Cir. 2005). Only after such a *prima facie* case is made by MGE, does the burden shift to GE/PMI to produce evidence of deductible expenses and the elements of profits attributable to factors other than the copyrighted work. *Powell*, 2007 WL 4513119 at *2; *Thoroughbred*, 488 F.3d at 360; *Bonner*, 404 F.3d at 294. In the present case, as a matter of law, MGE failed to prove GE/PMI's gross revenues attributable to the infringement to satisfy even that first step. MGE's copyright infringement claim should therefore have been dismissed at the close of MGE's case for MGE's complete failure to meet its initial burden.

MGE did not prove GE/PMI's gross revenue attributable to the infringement and, therefore, as a matter of law, the burden never shifted to GE/PMI to prove deductible expenses or elements of profits attributable to factors other than using MGE's software. *Powell*, 2007 WL 4513119 at *2; *see also Estate of Vane v. The Fair, Inc.*, 849 F.2d 186, 190 (5th Cir. 1988); *Sefton v. Webbworld, Inc.*, No. 3:00-CV-0042–Att, 2003 WL 21406292, at *4 (N.D. Tex. 2003) (mem. op.). Although MGE introduced GE/PMI's gross revenues (DX-37), the term "gross revenue" in section 504(b) does not mean "all profits produced by an infringer, no matter the source . . . ." *Bonner*, 404 F.3d at 294. Indeed, "the statutory term 'infringer's gross revenue' should not be construed so broadly as to

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 16

290686.1

include revenue from lines of business that were unrelated to the act of infringement". *On Davis v.*

*The Gap*, 246 F.3d 152, 160 (2d Cir. 2001). Rather, "gross revenue" means only that revenue

"reasonably related to the infringement." *Bonner*, 404 F.3d at 294; *On Davis*, 246 F.3d at 160 ("the

term 'gross revenue' . . . means gross revenue reasonably related to the infringement, not unrelated

revenues"); *Pham v. Jones*, No. Civ.A.H-05-2027, 2006 WL 1342826, at *4 (S.D. Tex. May 13,

2006) (same).

Thus, before the copyright owner can shift the burden to the infringer to prove deductible

expenses, it must "demonstrate[] some causal link between the infringement and the particular profit

stream . . . ." *Bonner*, 404 F.3d at 294; *Straus v. DVC Worldwide, Inc.*, 484 F.Supp. 2d 620, 645

(S.D. Tex. 2007) ("The plaintiff has the burden of proving that the defendant's gross revenues are

specifically attributable to the sale of the infringing works."); *see also Polar Bear Prods., Inc. v.*

*Timex Corp.*, 384 F.3d 700, 710 (9th Cir. 2004) (holding that a plaintiff must satisfy "its statutory

obligation to demonstrate a causal nexus between the infringement and the profits sought"); *Andreas*

*v. Volkswagen of Amer., Inc.*, 336 F.3d 789, 796 (8th Cir. 2003) ("The burden of establishing that

profits are attributable to the infringed work often gets confused with the burden of apportioning

profits between various factors contributing to the profits. 'The plaintiff has the burden to

demonstrate a nexus between the infringement and the indirect profits before apportionment can

occur.'"); *On Davis*, 246 F.3d at 160-61 (holding that plaintiff "failed to discharge his burden" by

failing to present gross revenue related to sales promoted with infringing advertisement); *Mackie*

*v. Rieser*, 296 F.3d 909, 915 (9th Cir. 2002) ("[T]here must first be a demonstration that the

infringing acts had an effect on profits before the parties can wrangle about apportionment."); *Univ.*

**DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S**
**RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR**
**NEW TRIAL AND BRIEF IN SUPPORT**
**CASE NO. 4:04-CV-929-Y**                                                        **PAGE 17**

290686.1

*of Colorado Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1375 (Fed. Cir.1999) (holding that the copyright owner had the burden to show that gross revenues from sales of product related to the copyright infringement); *Leland Med. Ctrs., Inc. v. Weiss*, No. 4:07cv67, 2007 WL 2900599, at *3 (E.D. Tex. Sept. 28, 2007) (collecting cases requiring "the plaintiff [to] demonstrate a nexus between the infringement and indirect profits"); 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.03[A] (2002) ("[A] copyright holder must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and profits generated indirectly from such an infringement").

As the Fourth Circuit noted in *Walker v. Forbes, Inc.*, section 504(b) is a "rule of causation" that requires "that the damages be direct rather than remote, and that an appropriate apportionment be made between revenue attributable to infringement and other revenue . . . ." 28 F.3d 409, 412 (4th Cir. 1994). In fact, because "causation in indirect profits claims is often more attenuated than claims for actual damages or direct profits[,] [i]t is . . . particularly important for the plaintiff in [an] indirect profit action to demonstrate the alleged causal link between the infringement and the profits sought." *Polar Bear Prods.*, 384 F.3d at 711 n.7.

In this case, the Court should dismiss MGE's copyright infringement claim because MGE failed to establish any nexus between the infringement and PMI's profits. If the copyright owner fails to establish this nexus between the infringement and the infringer's profits, then a court may deny recovery of the infringer's profits. *See Estate of Vane*, 849 F.2d at 190; *see also Mackie*, 296 F.3d at 916 (denying recovery and noting that without this causal link, indirect profits amount to nothing more than "rank speculation"); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 18

290686.1

505, 517 (9th Cir. 1985) ("[A] court may deny recovery of a defendant's profits if they are only remotely or speculatively attributable to the infringement.").

One sure way a copyright owner fails to establish this nexus is by simply offering an undifferentiated gross revenue figure without linking that revenue figure to the actual infringement like MGE did here. The Fifth Circuit flatly rejected such an approach in *Estate of Vane v. The Fair, Inc.* In that case, defendant, a chain of retail stores, improperly used a photographer's slides in television advertisements promoting its merchandise. 849 F.2d at 187. The plaintiff photographer sued, seeking the defendant's profits earned from commercials which used the infringing slides. As evidence of the defendant's revenues, however, the plaintiff offered "only a lump-sum figure for profits attributable to the television commercials that contained infringed material as a whole without accounting for the fact that the infringed material constituted only a fraction of any given commercial." *Id.* The district court held that such a figure was not sufficient proof of the defendant's profits and refused to award this lump sum figure. *Id.* In denying an award based on defendant's profits, the district court concluded that this gross revenue evidence was "totally speculative," and "[c]onsequently, Defendant [was] relieved of proving its deductible expenses and the elements of profit attributable to factors other than the copyrighted works." *Vane v. The Fair, Inc.*, 676 F.Supp. 133, 136-137 (E.D. Tex. 1987).

The Fifth Circuit affirmed the district court and held that "the use of an undifferentiated figure does not convincingly establish what profits are attributable to the infringement." 849 F.2d at 187. The court of appeals reasoned that such a figure could not establish what profits were attributable to the infringing conduct because the slides were only part of the expenses of the

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y                                                    PAGE 19

290686.1

commercial, only appeared part of the time that the commercials were on the air, and only accounted for one of the elements in generating profits from the commercial. *Id.* In affirming the district court's denial of an award based on defendant's profits, the Fifth Circuit held it was not error "to reject this attempt to show revenues attributable to the infringement as speculative." *Id.* at 190.

Similarly, in *On Davis v. The Gap*, a plaintiff jewelry designer sought defendant The Gap's profits for its use of his copyrighted eyeglasses in The Gap's advertising campaign. 246 F.3d at 159-160. However, the plaintiff's only evidence of gross revenues, like MGE's evidence in this case, was The Gap's total gross revenue. *Id.* The Second Circuit found this insufficient to establish an infringer's profits, holding that "it was incumbent on [the plaintiff] to submit evidence at least limited to the gross revenues of the Gap label stores, and perhaps also limited to eyewear or accessories." *Id.* at 160. The Court analogized its ruling to the recovery of profits from a book publisher who improperly published a copyrighted poem in an anthology:

> [I]f a publisher published an anthology of poetry which contained a poem covered by the plaintiff's copyright, we do not think the plaintiff's statutory burden would be discharged by submitting the publisher's gross revenue resulting from its publication of hundreds of titles, including trade books, textbooks, cookbooks, etc. In our view, the owner's burden would require evidence of the revenues realized from the sale of the anthology containing the infringing poem. The publisher would then bear the burden of proving its costs attributable to the anthology and the extent to which its profits from the sale of the anthology were attributable to factors other than the infringing poem, including particularly the other poems contained in the volume.

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 20

290686.1

*Id.* Thus, because The Gap's gross revenue figure was derived by sales that were in no way promoted by the infringing advertisement, the plaintiff had failed to discharge his burden and could not recover defendant's profits. *Id.*

Other courts have consistently rejected the use of undifferentiated gross revenues figures to establish the causal link between the infringement and the profits sought. In *Polar Bear Products, Inc. v. Timex Corp.*, the Ninth Circuit held that "a copyright owner is required to do more initially than toss up an undifferentiated gross revenue number . . . ." 384 F.3d at 711. Otherwise, the "infringer's profits are only remotely and speculatively attributable to infringement, [and] courts will deny recovery to the copyright owner." *Id.*; *accord Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514 (4th Cir. 2003) (because the plaintiff offered only speculative evidence of a causal link between the infringement and the revenues that the defendants earned from these sources, and because the defendants' request for summary judgment was supported by unrebutted evidence demonstrating that these revenues were not, in fact, in any way attributable to the infringement, the court held there was no issue of material fact for consideration by the jury); *Straus v. DVC Worldwide, Inc.*, 484 F.Supp. 2d 620, 647 (S.D. Tex. 2007) (rejecting plaintiff's submission of the gross revenues of a division of the defendant corporation as insufficient to establish indirect profits because it did not "indicate which revenue was generated from its work with GSK [in using the copyrighted work] and which revenue came from other sources."); *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 271 F.Supp. 2d 737, 751-52 (D. Md. 2003) (rejecting plaintiff's calculation of defendant's gross profits as being defendant's entire gross revenue, holding that it was "utterly implausible" that all of defendant's profits resulted from the defendant's use of plaintiff's

copyrighted work, and thus, plaintiff had failed to establish a causal link between the infringement and the indirect profits).

In *Taylor v. Meirick*, Judge Posner writing for the Seventh Circuit concluded that the court could not simply accept a plaintiff's estimate that 2% of a plaintiff's net profits was allocable to the infringing work when plaintiff failed to present any evidence that the infringing product represented 2% of defendant's sales. 712 F.2d 1112, 1122 (7th Cir. 1983). Judge Posner reasoned that "[i]t was not enough to show [defendant's] gross revenues from the sale of everything he sold, which is all, really, that [the plaintiff] did ." *Id.* As Judge Posner explained, "[i]f General Motors were to steal your copyright and put in a sales brochure, you could not just put a copy of General Motors' corporate income tax return in the record and rest your case for an award of infringer's profits." *Id.*

MGE did just that – MGE simply pointed to PMI's gross revenues from everything PMI sold or serviced (both MGE and non-MGE equipment) for the years 2001 to 2004 and rested its case. This Court should not have permitted the case to proceed when MGE's only damages evidence consisted of GE/PMI's gross revenues from servicing every conceivable brand of UPS machine and other unrelated equipment such as Cummins' generators, Cyberex transfer switches and batteries.

Furthermore, MGE cannot avoid its burden by arguing in closing argument that MGE has a 30% market share in the UPS industry in North America and therefore the jury should take one-third of PMI's total revenues from 2001 to 2004. Not only is this statement not supported by the record, it is actually contradicted by it. *See* 2003 Frost & Sullivan – North American UPS Markets – End-User Study [DX-287] at 3-59, 3-60 (stating that MGE's 2003 share of the UPS market ranged from 10.6% to 12.2%, **not** 30%). Additionally, MGE's market share is not equivalent to introducing

evidence to prove GE/PMI's revenues related to the infringement, particularly when MGE could only

satisfy its burden by presenting GE/PMI's revenues related to the servicing of MGE UPS machines

using the infringing software. *See Thoroughbred Software Int'l., Inc.*, 488 F.3d at 360 (holding that

plaintiff failed to meet its initial burden to recover defendant's profits when it presented a measure

of damages that was "no measure of [defendant's] revenues."). As Judge Posner noted in *Meirick*,

a court is not bound to accept a plaintiff's estimate as to what percent of total net profits is allocable

to the infringement when there is no evidence to support that estimate. 712 F.2d at 1122.

Nor can MGE avoid its burden by arguing that it is too difficult to separate GE/PMI's total

gross revenue from the revenue that is actually attributable to the alleged infringement. As the Sixth

Circuit noted in *Thoroughbred Software*, complications in calculating gross revenue do not relieve

a plaintiff of its obligation to put forth evidence that would allow the trier of fact to determine what

portion of the defendant's fees were attributable to the infringing work. 488 F.3d at 361. MGE did

nothing to prove what revenues were attributable to the alleged infringement. Instead, it did exactly

what the Fifth Circuit warned against in *Estate of Vane*: It submitted an undifferentiated gross

revenue figure that made no allocation of revenues attributable to the alleged instances of

infringement. For these reasons, the Court should have granted GE/PMI's motion for judgment as

a matter of law that MGE take nothing on its claim for copyright infringement and never should have

submitted the issue to the jury. *Broadcast Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 237 (5th Cir.

1998) (district court does not have discretion to premise its award for copyright infringement on

infringements not proved by admissible evidence); *McCaleb v. Fox Film Corp.*, 299 F. 48, 51 (5th

Cir. 1924) (accounting for infringement could not be maintained in absence of showing of recoverable damages or associated profits).

**B.    Alternatively, There Is No Legally Insufficient Evidence to Support the Jury's Damage Award.**

At the close of all the evidence, the jury returned a verdict awarding MGE $4.6 million in damages. There is no legally sufficient evidence to support such an award and, therefore, the Court should set aside the jury's verdict and enter a take-nothing judgment on MGE's claims.

In its case, MGE not only had the burden of proving the fact of damages, it had the burden of providing the jury with the means of calculating those damages. *Amigo Broadcasting, LP v. Spanish Broadcasting System, Inc.*, No. 06-50748, 2008 WL 725789 *5 (5th Cir. March 19, 2008); *Burkhart Grob Luft und Raumfahrt Gmbh & Co. KG v. E-Systems, Inc.*, 257 F.3d 461, 467 (5th Cir. 2001); *Peterson v. Hager*, 714 F.2d 1035, 1037 (10th Cir. 1983). It never did so in its case-in-chief. Upon this Court's erroneous denial of GE/PMI's motion for judgment at the close of MGE's case, GE/PMI had little choice but to present evidence in its case-in-chief in an attempt to reduce the amount of damages. Accordingly, during the defendants' case-in-chief, GE/PMI called its rebuttal damage expert, Irving Rappaport.[3]

Relying on the expert report provided by GE/PMI's former CFO, Michael DelGiacco, Rappaport testified that the annual maintenance charge for the high-end machines serviced by PMI was $1,868 per year, which was the maximum charge for maintaining the equipment. (April 16, 2008 Trial Tr. Vol. 12:79-80). Again based on the report of GE/PMI's former CFO, Rappaport

---

[3]GE/PMI's evidence should not be considered in granting GE/PMI's motion on the grounds set out in section A of this motion because the case should have been dismissed when MGE rested. Even considering all the evidence, however, GE/PMI is still entitled to judgment as a matter of law.

testified that GE/PMI's profit margin was 28.4% (leaving deductible expenses of 71.6%). *Id.* at 80; 99-100. Rappaport testified that based on the number of proven times the software was used (the five instances the software was used by three former GE/PMI employees), the total amount of net profits GE/PMI would have earned in servicing MGE UPS equipment using the software or technical documentation would have been $2,653. *Id.* at 78. On cross-examination, Rappaport testified that assuming that the number of times that the software was allegedly used on PX-144 was correct, the net profits PMI would have earned on servicing the relevant MGE equipment would be $90,519. *Id.* at 94. Rappaport explained that he did not use DX-37 (the PMI gross revenue bar chart) in making his calculations because total revenues have nothing to do with the specific instances of use, and there was no basis for including all of PMI's revenues for its entire business when only a portion of the revenue was derived from servicing the MGE UPS equipment at issue. *Id.* at 83-83. The testimony from Rappaport was the only evidence of net profits offered by either party, was uncontradicted and unimpeached, and thus is conclusive on this issue. *See Evans*, 484 F.3d at 334 (in considering a motion for judgment, courts should give credence to evidence favoring the moving party that is uncontradicted and unimpeached). Rappaport explained his methodology, explained his basis for using a profit margin of 28.4% and made one complete calculation based on five uses of the software, and alternatively on MGE's claimed uses as reflected in PX-144. His calculations were clear, precise and direct. MGE offered no controverting evidence. Rappaport concluded that GE/PMI earned $2,653 for the five instances of use, but in any event no more than $90,519 in net profits based on MGE's "Hit Parade" reflected in PX-144.

**DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL AND BRIEF IN SUPPORT CASE NO. 4:04-CV-929-Y**

**PAGE 25**

290686.1

At the close of all the evidence, GE/PMI re-urged its motion for judgment, which was denied by the Court.  The Court thereafter instructed the jury as follows on damages:

> MGE has the burden of proving damages by a preponderance of the evidence.
>
> * * *
>
> The law allows a successful plaintiff to recover any profits of the Defendants attributable to the wrongful conduct.  Defendants' profits consist of the amount of money that Defendants have made due to the wrongful conduct after deducting Defendants' expenses.  MGE is not necessarily entitled to all of Defendants' profits but only to the part of Defendants' profits which are due to the wrongful conduct.

Doc. No. 424 at 15-17.  In the verdict form, the jury was asked the following question:

> What sum of money, if any, if now paid in cash, would fairly and reasonably compensate MGE for its damages, if any, proximately caused by the conduct of any of the following Defendants?

(Verdict of the Jury [Doc. No. 440] at 17).  The jury answered that question as follows:

A.   Trade secrets, if any, on MGE's Data Disk:

- Net profits earned by PMI or General Electric from January 1, 2001 to December 17, 2001

   $ 460,000

- Net profits earned by PMI or General Electric from December 18, 2001 to August 15, 2005

   $ 1,852,000

B.   Software programs:

- Net profits earned by PMI or General Electric from January 1, 2001 to August [sic] December 17, 2001

   $ 368,000

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 26

290686.1

- Net profits earned by PMI or General Electric from December 18, 2001 to August 15, 2005

  $ <u>1,852,000</u>

  \* \* \*

C.   The materials referenced by Michael Stephens in his testimony:

- Net profits earned by PMI or General Electric from January 1, 2001 to December 17, 2001

  $ <u>92,000</u>

(Verdict of the Jury [Doc. No. 440]).

MGE made no objection to the Court's damages instruction or the above verdict form. Consequently, MGE had the burden to prove GE/PMI's net profits using MGE's software and technical documentation to service MGE UPS equipment at issue, specifically the EPS 3000, EPS 6000 and Comet.  In closing, however, MGE's counsel ignored MGE's burden, never mentioned GE/PMI's net profits, and never explained how to calculate damages based on the profits earned from GE/PMI's preventative maintenance service visits on the relevant equipment.  Instead, MGE's counsel argued the jury should award an arbitrary percentage of 45%[4] of GE/PMI's gross revenues based on counsel's inaccurate estimate of MGE's overall market share.[5]  In other words, MGE's counsel presented unsupported damage figures that were legally and factually irrelevant and invited the jury to speculate or guess what PMI's net profits actually were.  MGE's counsel purposefully

---

[4]In closing, MGE's counsel asked the jury to award 15% of GE/PMI's revenues from 2001 to 2004 for the misappropriation of trade secrets on the Data Disk and one-third of GE/PMI's revenues from 2001 to 2004 for copyright infringement.  (April 18, 2008 Trial Tr. Vol. 13:18-21; 27).

[5]In closing, MGE's counsel incorrectly stated that MGE had a 30% market share in the UPS industry in North America and, therefore, the jury should take one-third of PMI's total revenues from 2001 to 2004.  Not only is this statement not supported by the record, it is actually contradicted by it.  See 2003 Frost & Sullivan – North America End-User Study [DX 287] (stating that MGE's 2003 share of the UPS market ranged from 10.6% to 12.2%, <u>not</u> 30%).

ignored the Court's instructions and the questions on net profits the jury was asked to answer. Moreover, MGE failed to present any evidence, which the law requires it to present to establish its claims. MGE's strategy of inviting the jury to award millions in damages based on an arbitrary percentage of GE/PMI's gross revenues directly resulted in the jury's speculative verdict – a verdict unsupported by even a scintilla of evidence. Because MGE offered no proof of damages, MGE impermissibly left the jury to engage solely in guesswork and conjecture requiring reversal as a matter of law.

Based on the jury award, it is abundantly clear that the jury's misunderstanding of the damages aspect of the jury charge indicated serious confusion, resulted from speculation, and lacked any evidentiary basis. Furthermore, the jury's damages award was not within mathematical limitations established by any of the witnesses, and it was not supported by the evidence as a whole. The undisputed evidence established that from 1996 to 2005, PMI's **gross revenues** earned from servicing MGE units requiring software was $1,676,500, yet the jury awarded damages totaling almost four times that amount in answer to a question about GE/PMI **net profits**. (April 16, 2008 Trial Tr. Vol. 12:9). As a matter of law, MGE failed to prove that GE/PMI's **net profits** were $4.6 million. MGE never even offered any evidence of any GE/PMI profit figure that was causally linked to the alleged misappropriation and unfair competition. Because there is no legally insufficient evidence to support the jury's award of $4.6 million, the Court should enter judgment as a matter of law on MGE's misappropriation and unfair business competition claims.

Similarly, MGE failed in its burden to demonstrate some causal link between the copyright infringement and GE/PMI's particular "profit stream." *See Bonner*, 404 F.3d at 294. Instead, MGE

**DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S**
**RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR**
**NEW TRIAL AND BRIEF IN SUPPORT**
**CASE NO. 4:04-CV-929-Y**

**PAGE 28**

290686.1

did exactly what the Fifth Circuit and other courts have warned plaintiffs not to do: It submitted an undifferentiated gross revenue figure for every piece of equipment GE/PMI ever serviced from 2001 to 2004. *See generally, Estate of Vane*, 849 F.2d at 187; *Meirick*, 712 F.2d at 1122. There was no evidence from which a jury could properly determine the portion of GE/PMI's gross revenues that would have been attributable to the specific acts of infringement. MGE failed to carry its burden. Accordingly, GE/PMI is entitled to judgment as a matter of law on MGE's copyright infringement claim.

> **1.    No Legally Sufficient Evidence Supports the Jury's $4.6 Million Award Since that Amount Far Exceeds GE/PMI's Net Profits Earned from Servicing the MGE UPS Equipment at Issue.**

Alternatively, the net profits actually awarded by the jury far exceed the amount of GE/PMI's profits a reasonable jury could have found from the unimpeached and uncontradicted evidence as a whole. Assuming MGE satisfied the first step in establishing infringer's profits, section 504(b) provides that GE/PMI was required to prove its deductible expenses and the elements of profit attributable to factors other than the copyrighted work.[6]  17 U.S.C. § 504(b) (2008); *Powell v. Penhollow*, No. 06-10760, 2007 WL 4513119, at *2 (5th Cir. Dec 21, 2007) (slip copy); *Thoroughbred Software Int'l., Inc.*, 488 F.3d at 360; *Bonner*, 404 F.3d at 294.

---

[6]This apportionment is easily confused with the apportionment that occurs in the first step. To be clear, the plaintiff has the initial burden to establish the revenues that are attributable to the infringed work. Once that is established, it is the defendant's burden to establish its deductible expenses and what portion of those profits are related to elements other than the infringed work. *See Andreas v. Volkswagen of Amer., Inc.*, 336 F.3d 789, 796 (8th Cir. 2003) (explaining that the plaintiff was required to establish defendant's gross revenues of the product it sold using a commercial with plaintiff's copyrighted phrase and then it was defendant's burden to establish that those attributed revenues, in turn, were related to other factors such as non-infringing commercials, other parts of the commercial that did not contain the infringing phrase, customer loyalty, or brand recognition).

An acceptable formula includes taking a defendant's overall costs and allocating a portion of those costs to the infringing acts based on a ratio of the revenues from those acts to the total revenue. *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 516 (9th Cir. 1985); *see, e.g., Love v. Kwitny*, 772 F.Supp. 1367, 1371 (S.D.N.Y. 1991), *aff'd*, 963 F.2d 1521 (2nd Cir.1992) (approving defendant's calculation of overhead expenses by allocating to proceeds from sales of the infringing work both direct and indirect overhead expenses in same proportion as those expenses bore to each defendant's net sales for the relevant year); *Dolori Fabrics, Inc. v. Limited, Inc.*, 662 F.Supp. 1347, 1356 (S.D.N.Y. 1987) (holding that where infringer calculated overhead cost by determining what percentage of its total sales revenues represented overhead costs (8.24%) and then multiplying this figure by the sales price to arrive at an overhead cost allocation, the infringer provided an acceptable formula for allocating its overhead costs); *Aitken, Hazen, Hoffman, Miller, PC v. Empire Const. Co.*, 542 F.Supp. 252, 265 (D. Neb. 1982) ("The defendant need not . . . prove that each item of overhead was used in connection with the infringing activity.").

In this case, the uncontested evidence at trial established that GE/PMI's profit margin was 28.4% with deductible expenses constituting 71.6% of its total revenues. GE/PMI's expert Rappaport, then simply calculated GE/PMI's net profits by multiplying GE/PMI's profit margin by the total revenues earned by GE/PMI from servicing the MGE UPS equipment at issue. Assuming five instances that the software was used by three former employees, Rappaport concluded that the total amount of net profits GE/PMI would have earned using the software and technical documentation would be $2,653. Assuming the number of times MGE claimed the software was used based on PX-144, Rappaport concluded GE/PMI's net profits would be $90,519. Yet the jury

**DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S**
**RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR**
**NEW TRIAL AND BRIEF IN SUPPORT**
**CASE NO. 4:04-CV-929-Y**                                                                           PAGE 30

290686.1

returned a total verdict of $4,624,000, of which $2,220,000 was related to the use of MGE's software programs. In other words, the jury returned a verdict millions more than the amount a rational jury could have. In fact, according to MGE's "Hit Parade" (PX-144), GE/PMI only used the software two times in 2001, yet the jury awarded $368,000 in "net profits" in 2001, resulting in an absurd profit of $184,000 per software use. The record does not support such a speculative award.

2.     **MGE Presented Legally Insufficient Evidence to Sustain a Damage Award Beyond the Five Instances of Admitted Use of the Software.**

MGE provided legally insufficient evidence of damages beyond the five instances of admitted use of the software. MGE produced a "Hit Parade" (PX-144), but there is no evidence to support any of these uses beyond MGE counsel's argument that "calibrate" is a verb. No MGE witness, not even Tom Wilkowske, could testify as to the procedures PMI used in preventive maintenance. He made some suppositions, assumptions and conclusions in an effort to support MGE's "Hit Parade," but his testimony falls far short of being legally sufficient. Mr. Wilkowske was not familiar with PMI's preventive maintenance procedures and never personally witnessed PMI conducting a preventive maintenance service call. His unsupported conclusions are squarely contradicted by his own admission that (1) the MGE UPS equipment at issue can be serviced fully, manually, and completely without MGE's software, and (2) in his entire career, he had never used MGE's software to recalibrate a machine during the course of preventive maintenance. Stephane Curcio, who helped create the software, admitted that the use of microprocessors inside the UPS machine (the firmware with which the software communicates) made the machine more reliable or, as he put it, more "stable." This development eliminates the need for recalibration during preventive maintenance and

certainly supports Mr. Wilkowske's testimony that the software was not needed to service the machines.

MGE cannot establish causation or damages on supposition and innuendo. It could have, but did not, call any of the field service engineers on the "Hit Parade" to testify with the exception of Sal Puga and Michael Stevens. Mr. Puga said nothing about the use of the software. Mr. Stevens unequivocally testified that he used the software on two occasions, and that he did not need the software to perform preventive maintenance. Instead, he explained in detail the procedures PMI used to check the unit's calibration and check for any abnormal alarms. He demonstrated the procedures followed in a preventive maintenance by pointing to specific tools within PMI's tool kit.

Likewise Al Papineau, a long-time GE/PMI field technician, explained that he simply compared the panel meters on the front panel of the MGE unit with the actual voltage he measured with his handheld digital voltmeter or True RMS meter. He said if the two readings were within a couple of volts, he would mark the GE/PMI field service report as "checks ok" under the calibrate section. He also explained how he marked the section of the GE/PMI field service report for abnormal alarms. He testified that he would see if there were any alarms on the MGE unit's front display. If there were none, he would mark the form as "checks ok" under the check alarm buffer for abnormal alarms. Papineau's testimony was so compelling, MGE's counsel accepted it in its entirety and, in fact, subtracted those "hits" relating to Papineau from MGE's "Hit Parade." (PX-144). Papineau also testified about how he trained others to use the voltmeter to check the calibration of MGE UPS machines and to check for abnormal alarms in a similar manner.

Tim Thomas, GE/PMI's technical lead, corroborated Papineau's testimony about how GE/PMI field service engineers routinely filled out these forms on a day-to-day basis. In fact, Thomas testified that he personally interviewed 40 of the current and former GE/PMI field service engineers whose names appear on MGE's "Hit Parade." (PX-144). Based upon his investigation, Thomas concluded that the GE/PMI engineers were simply checking the MGE unit with a handheld meter and the front panel and did not use software to perform these checks.

There was an abundance of testimony about the various methods available to check such readings on the machine without using MGE's software tool. While the tool can be used for these checks, it is not necessary. MGE's whole case for the instances identified in PX-144 (except for Puga and Stevens) rest upon faulty assumptions and even worse reasoning. When there is no basis to conclude how many more instances of infringement occurred, gross revenues should be limited to only the proved instances. *See Vuitton et Fils, S.A. v. Crown Handbags,* 492 F.Supp. 1071, 1077 (S.D.N.Y.1979) (holding that plaintiff could not recover defendant's gross revenues for the entire relevant period but only the revenue of six of the defendant's infringing purses where "[t]here [was] no basis to conclude how many more than six it had"). MGE should not be entitled to any damages award based on its "Hit Parade" because its own witnesses contradicted its case, and proof of software usage consisted of legally impermissible innuendo and conjecture. At most, MGE had evidence of five instances of use and no evidence of any damages.

### 3.    Alternatively, MGE Should Not Be Allowed to Recover the Same Damages Twice for the Same Injury.

Under Texas law, a plaintiff is not entitled to more than one recovery for the same injury; this principle – "the one-satisfaction rule" – applies when a defendant commits the same or differing acts

that result in a single injury. *Tompkins v. Cyr*, 202 F.3d 770, 785 (5th Cir. 2000) (holding that special verdict form was erroneous because it allowed recovery for mental anguish under two separate causes of action based on the same conduct by the defendant). Additionally, although a plaintiff may assert alternative theories of liability, a party may not recover the same damages twice, even though recovery is based on two different theories. *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 441 (5th Cir. 1987) (holding that plaintiffs could not recover damages twice where claims for common law fraud and breach of contract resulted in the same injury); *see also Amigo Broadcasting, LP v. Spanish Broadcasting System, Inc.*, No. 06-50748, 2008 WL 725789, at *7 (5th Cir. Mar. 19, 2008) (holding that plaintiff could only recover damages once for breach of contract, based on either expectation damages or reliance damages, but not both).

Recently, in *Advocare Int'l, LP v. Horizon Laboratories, Inc.*, the Fifth Circuit reiterated the prohibition on double recovery. No. 06-11157, 2008 WL 1115241, at *11-12 (5th Cir. April 11, 2008). The court held that, under Texas law, although the defendant's actions resulted in judgments for both breach of fiduciary duty and fraud, the plaintiff was not entitled to two damage awards, because the same course of conduct could support only one such award. *Id.* In the present case, MGE asserted alternative liability theories. The jury found GE/PMI liable on three of these alternative theories – copyright infringement, misappropriation of trade secrets, and unfair competition. (Verdict of the Jury [Doc. No. 440]). Further, the Court instructed the jury to award damages based on GE/PMI's net profits.

The jury awarded multiple and duplicative damages for the same conduct. For example, the Data Disk at issue consisted of a variety of information, including the MGE software manual

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 34

290686.1

referenced by Michael Stephens, which was intended to support use of MGE's software. Accordingly, use of the materials referenced by Mr. Stephens is duplicative of use of the Data Disk; and the only reasonable use of the Data Disk would be to service the MGE UPS equipment at issue. Notably, MGE has admitted that the Data Disk is a "supplemental resource <u>used with</u> the Protected Software to service MGE UPS devices." (Plaintiff's Second Amended Complaint [Doc. No. 88] at 8) (emphasis added).[7] Even Prescott admitted that the same facts and circumstances supported the damages for MGE's copyright infringement claim, misappropriation of trade secrets claim, and unfair business competition claim. Therefore, even if GE/PMI is liable for infringing uses of copyrighted software, any use of the Data Disk and/or use of the materials referenced by Mr. Stephens are related to those same incidents of infringement and do not relate to any independent loss for which MGE should be compensated. To allow MGE to recover GE/PMI's net profits separately for use of the Data Disk and use of the software improperly compensates MGE twice for the same conduct.

It appears that the jury recognized the duplicative nature of the damage questions. For example, under trade secrets, the jury awarded $460,000 for use of the trade secrets during 2001. In awarding damages for the same time period for use of the software and use of the material referenced by Mr. Stephens, the jury again awarded a total of $460,000, but apportioned that amount between the use of the software ($368,000) and use of the software manual discussed by Mr. Stephens ($92,000), apparently recognizing that profits could not be earned separately for the same conduct. Despite the fact that the jury may have found that GE/PMI's conduct created liability under

---

[7] The factual assertions in MGE's complaint constitute judicial admissions that are conclusively binding on MGE. *White v. Arco/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983).

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 35

290686.1

more than one theory, the damages, assuming arguendo that they were even proved, can be awarded only once. Any uses of the software or the Data Disk were for servicing MGE UPS equipment. Because it is improper for MGE to recover multiple awards of damages for the same conduct, the Court should reduce the amount of the final judgment to $2,312,000.

## C.    MGE's Claims Occurring Before December 17, 2001 are Barred by the Statute of Limitations.

The Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b) (2007); *Makedwde Pub. Co. v. Johnson*, 37 F.3d 180, 181 (5th Cir. 1994) (holding that each act of infringement gives rise to an independent cause of action and rejecting the "continuing tort" theory of infringement); *Recursion Software, Inc. v. Interactive Intelligence, Inc.*, 425 F. Supp. 2d 756, 777 (N.D. Tex. 2006) (holding that plaintiff could not recover for copyright infringement claims accruing more than three years prior to the date of filing of suit, but plaintiff could recover for acts of infringement occurring within three years of the date of filing); *King Empire, Inc. v. Milan Courtyard Homes, Ltd.*, 173 F. Supp. 2d 649, 654 (S.D. Tex. 2001) (barring recovery from all instances of copyright infringement occurring more than three years from the date of filing suit, but allowing claims occurring within three years of the statute of limitations to remain). Misappropriation of trade secrets and unfair competition likewise have three year statutes of limitations. TEX. CIV. PRAC. & REM. CODE § 16.010 (West 2008); *see also General Universal Systems, Inc. v. HAL, Inc.*, 500 F.3d 444, 451 (5th Cir. 2007) (noting that the current statute "explicitly precludes treating trade secret misappropriation as a continuing tort"); *Daboub v. Gibbons*, 42 F.3d 285, 290-91 (5th Cir.1995) (refusing to apply continuing tort theory to unfair

competition claim).

MGE filed suit against GE/PMI on December 17, 2004.  *See* Plaintiff's Original Complaint [Doc. No. 1].  Thus, any alleged damages resulting from the use of the software or Data Disk more than three years before the date of filing – i.e., prior to December 17, 2001 – are barred by the statute of limitations.

MGE's only argument is that the parties agreed to toll limitations pursuant to paragraph 2 of a Non-Disclosure Agreement between MGE and PMI.  That paragraph provides:

> 2.      In an effort to foster good faith discussions, the Parties agree that neither PMI (including its parent or affiliate organizations) nor MGE (including its parent or affiliate organizations) shall initiate any legal proceeding against the other while substantive discussions proceed under the terms of this Agreement. Any party may proceed with litigation after giving the other party three days' [sic] notice that it reasonably believes the discussions are unproductive.

This provision, however, does not constitute a tolling agreement.  Under Texas law, which governs the Non-Disclosure Agreement, any waiver of a statute of limitations must be specific and only for a predetermined length of time.  *Starcrest Trust v. Gerry*, 926 S.W.2d 343, 351 (Tex. App–Austin 1996, no writ); *Duncan v. Lisenby*, 912 S.W.2d 857 (Tex. App–Houston [14th Dist.] 1995, no writ); *American Alloy Steel, Inc. v. Armco, Inc.*, 777 S.W.2d 173 (Tex. App.–Houston [14th Dist.] 1989, no writ); *see also Titus v. Wells Fargo Bank & Union Trust Co.*, 134 F.2d 223, 224 (5th Cir. 1943) (limitation statutes are expressions of state public policy to encourage promptness in bringing suit). Requiring such certainty in tolling agreements is consistent with the dual purpose of the limitations period -- to force parties to litigate claims while evidence is still fresh, and to grant a prospective defendant relative security and stability by allowing it better to estimate its outstanding legal obligations.  *Servicios-Expoarma, C.A. v. Indus. Mar. Carriers, Inc.*, 135 F.3d 984, 989 (5th Cir.

1998). "The purpose of [limitation] statutes may not be thwarted by general agreements to waive the benefit of the statute permanently." *Titus*, 134 F.2d at 224.

The provision at issue in the present case is not specific. It neither mentions the statute of limitations, nor extends the time to file suit for a predetermined period of time. On its face, it is clearly intended simply to provide notice before the initiation of litigation. It is not an agreement to toll limitations. Moreover, PX-178 shows that the purpose of the agreement was to do no more than "provide for the exchange and safeguarding of certain confidential information and to arrange for the commencement of business discussions between the parties." (PX-178 at 5). Thus, because the Non-Disclosure Agreement lacks specificity and is not for a predetermined length of time, it cannot constitute a tolling agreement as a matter of law. Therefore, the Court must set aside the jury's damages award for conduct occurring before December 18, 2001.

## D.    MGE is Not Entitled to a Permanent Injunction.

The Court permanently enjoined GE/PMI from using MGE's software for any purpose; from using MGE's trade secrets contained in its Data Disk; and from altering, destroying, disseminating, copying or duplicating MGE's software in any manner. *See* Court's Final Judgement [Doc. No. 445 at 2]. However, the uncontradicted evidence shows that MGE is not entitled to permanent injunctive relief.

To be awarded such relief, MGE must prove: "(1) actual success on the merits; (2) no adequate remedy at law; (3) that the threatened injury outweighs any damage to the defendant; and (4) that the injunction will not disserve the public interest." *Playboy Enterprises, Inc. v. Webbworld, Inc.*, 991 F.Supp. 543, 561 (N.D. Tex. 1997), *aff'd*, 168 F.3d 486 (5th Cir. 1999). To prevail on the

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 38

290686.1

second element, MGE was required to "show a significant threat of cognizable injury and that money damages would not fully repair the threatened harm." *Id.* No such threat exists, however, when there is no serious danger of a recurrent violation. *See id.* (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) (requiring "something more than the mere possibility which serves to keep the case alive")). This is also true under the standards set forth for injunctive relief under section 502(a) of the Copyright Act: "When there is no probability or threat of continuing infringements, injunctive relief is ordinarily inappropriate." *Harolds Stores, Inc. v. Dillard Dept. Stores, Inc.*, 82 F.3d 1533, 1555 (10th Cir.1996) (citing 3 Melville B. Nimmer & David Nimmer, *Nimmer On Copyright* § 14.06[B], at 14-97 to 14-98 (1995)).

For example, in *Harolds Stores, Inc. v. Dillard Department Stores, Inc.*, defendant Dillard admitted to infringing 19 of Harold's copyrighted print fabrics by selling skirts made from the fabric's design. *Id.* at 1539. Nevertheless, Harolds was not entitled to injunctive relief because the parties had disposed of all the infringing skirts by agreement. *Id.* at 1556. Thus, there was no probability that Dillard would continue to infringe Harolds' pattern, and because there was no threat of continuing infringement, Harolds was not entitled to a permanent injunction. *Id.*

Similarly, MGE faces no threat of continuing infringement. Just as Dillard no longer had any infringing skirts, GE/PMI no longer has copies of GE/PMI's software or Data Disk. All GE/PMI computers that might have had MGE software were impounded. *See* Court's Order for Injunction and Impoundment of Infringing Articles [Doc. No. 67]. Laptop "A," the one and only GE/PMI laptop where MGE's software was found, is in the possession of MGE's counsel. There is no evidence that GE/PMI continues to have in its possession any copies of MGE's Data Disk or

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 39

290686.1

technical documentation. Moreover, the evidence at trial showed that GE/PMI is no longer even in the business of servicing MGE UPS equipment. Thus, the Court should grant GE/PMI's renewed motion for judgment as a matter of law and deny MGE's injunctive relief.

**E.     MGE is Barred from Recovering its Attorneys' Fees.**

In its final judgment, the Court awarded MGE its attorneys' fees. MGE, however, is not entitled to any fees on any claims. First, MGE is not entitled to attorneys' fees for copyright infringement. Attorneys' fees are not available to a copyright owner if the infringement began before the date of registration. 17 U.S.C. § 412; *Morris v. Business Concepts, Inc.*, 259 F.3d 65, 73 (2nd Cir. 2001). Although the software was originally authored in the mid-1990's, MGE failed to register its copyrights until July 21, 2003 and February 9, 2004, after GE/PMI's alleged infringement began. Since any alleged infringement began more than two years before the registration of MGE's copyrights, MGE is not entitled to attorneys' fees as a matter of law. In fact, this Court used this same analysis when it barred MGE's recovery of statutory damages. [Doc. No. 421]; *accord Budget Cinema, Inc. v. Watertower Assocs.*, 81 F.3d 729, 733 (7th Cir.1996) ("Budget was not entitled to statutory damages or attorneys' fees because the alleged infringement commenced before the effective date of Budget's copyright registration."). Furthermore, MGE is barred from recovering attorneys' fees for alleged infringement occurring after its registration. A plaintiff may not recover attorneys' fees, even for any infringing acts that occurred after registration, if the same defendant infringed the same work prior to registration. *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 144 (5th Cir. 1992).

MGE is likewise not entitled to attorney's fees under its state law tort claims of

misappropriation of trade secrets and unfair business competition. *New Amsterdam Cas. Co. v. Texas Indus., Inc.*, 414 S.W.2d 914, 915 (Tex. 1967) (holding that under Texas law, "attorney's fees are not recoverable either in an action in tort or a suit upon a contract unless provided by statute or by contract between the parties"). There is no Texas statute authorizing attorneys' fees for these torts.

**F.     There is Legally Insufficient Evidence to Sustain the Jury's Finding that MGE's Software Qualifies for Copyright Protection.**

At the heart of MGE's copyright claim against GE/PMI is MGE's software — the "tool" it claims to have created to service the MGE UPS equipment it manufactures. Upon careful examination of MGE's software, it becomes readily apparent that MGE's software tool is not eligible for copyright because it is simply a means to operate and maintain MGE's UPS equipment. It is not the type of creative expression that normally enjoys copyright protection. The software also fails to qualify for copyright protection under the doctrines of merger and *scenes a faire*. Moreover, the lockout mechanism (*i.e.*, the "secret handshake" that must occur between the software and the UPS device) is a mechanism that courts uniformly hold does not constitute a copyrightable work. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 536 (6th Cir. 2004); *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992); *Atari Games Corp. v. Nintendo of Am., Inc.*, Nos. 88-4805 & 89-0027, 1993 WL 207548, at *1 (N.D. Cal. May 18, 1993). Finally, MGE's software is a "dumb" calibration tool which is functional, unoriginal, not expressive and throughly standardized. As a result, MGE's software is ineligible for copyright protection as a matter of law.

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 41

290686.1

1.   **MGE's Software Is Functional and Therefore Ineligible for Copyright Protection.**

Congress's power to define the scope of copyright protection is derived from the Constitution. U.S. Cons. art. I, § 8, cl. 8. Under this authority, Congress enacted the following standard for determining whether a work is eligible for copyright protection:

> (a) Copyright protection subsists ... in *original works* of authorship fixed in any tangible medium of expression ... Works of authorship include the following categories: (1) *literary works;* (2) musical works ...; (3) dramatic works ...; (4) pantomimes and choreographic works; (5) pictorial, graphic, and sculptural works; (6) motion pictures and other audiovisual works; (7) sound recordings; and (8) architectural works.

> (b) In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

17 U.S.C. § 102 (emphases added).

As the Sixth Circuit explained in *Lexmark*, whether a valid copyright exists for a computer program depends upon both the "originality and non-functionality of the work." 387 F.3d at 534 (emphasis added). Thus, even if MGE's software is completely an original work under section 102(a), which it is not, it must be non-functional to pass muster under section 102(b). To do so, MGE's software must qualify as a *non-functional* work, as opposed to a functional one — a distinction designed to separate the expression of an idea, which is copyrightable, from the idea itself, which is not. *Mazer v. Stein*, 347 U.S. 201, 217 (1954); *Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791, 800-01 (5th Cir. 2002). Because MGE's software is entirely functional, it is not protected under copyright law.

2.      **MGE's Software Is Not Copyrightable Because it Is Functional and It Is Nothing More than a Procedure, Process or Method of Operation Needed to Operate and Maintain MGE UPS Equipment.**

The "functionality" bar to copyrightability comes from section 102(b) of the Copyright Act., 17 U.S.C. § 102(b) denies copyright protection to procedures, processes, systems, or methods of operation. *Id.* "[T]hese terms . . . refer generally to a method for achieving a particular result." *Gates Rubber Co. v. Bando Chem. Indus.*, 9 F.3d 823, 836 n. 13 (10th Cir. 1993). The Sixth Circuit explained in *Lexmark* that section 102(b) distinguishes the "spheres" of copyright and patent law: "'[U]nlike a patent, a copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea — not the idea itself.'" *Lexmark*, 387 F.3d at 534 (quoting *Mazer*, 347 U.S. at 217).  For example, in the landmark case of *Baker v. Selden*, 101 U.S. 99 (1879), the Supreme Court considered the copyright of a book for a system of accounting.  The Court held that although the author's particular expression of the system was protectable, neither the system itself nor the forms necessary to operate the system were protectable. *Id.* at 103.

Codifying the principles first articulated in *Baker*, Congress enacted section 102(b) denying copyright protection to procedures, processes, systems, and methods of operation that, as the Supreme Court explained, are of "practical application" and designed to achieve a particular result. *Id.* This "functionality" exclusion that arises from section 102(b) requires the Court to conduct a factually intensive, "case-by-case" examination. *See Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 820 (1st Cir. 1995) (Boudin, J. concurring).  This inquiry must be conducted with particular care when a copyright is claimed in software because of software's "'essentially utilitarian'" nature. *Lexmark*, 387 F.3d at 535 (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 704 (2nd

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 43

290686.1

Cir. 1992)). As the Sixth Circuit noted, "'[c]ompared to esthetic works, computer programs hover even more closely to the elusive boundary line described in section 102(b).'" *Id.* (quoting *Altai*, 982 F.2d at 704).

In *Lotus*, the First Circuit Court of Appeals specifically applied the Copyright Act's section 102(b) "method of operation" exception to a computer software program and held that the menu command hierarchy for the Lotus 1-2-3 spreadsheet program was a functional, noncopyrightable "method of operation" under section 102(b). 49 F.3d at 815. The court defined "method of operation" as "the means by which a person operates something, whether it be a car, a food processor, or a computer." *Id.*; *see also Gates*, 9 F.3d at 836 n.13 (holding that "procedures, processes, systems and methods of operation". . . "refer generally to a method for achieving a particular result"). If alleged copyrighted works are "essential to operating something, then they are part of a 'method of operation' and, as such, are unprotectable." *Lotus*, 49 F.3d at 816. The court explained that the command system provided the only means by which users could control and operate Lotus 1-2-3. *Id.* In other words, "[w]ithout the menu command hierarchy, users would not be able to access and control, or indeed make use of, Lotus 1-2-3's functional capabilities." *Id.* at 815.

MGE's software likewise embodies "procedures, processes, systems, or methods of operation" for accessing, controlling and maintaining MGE's UPS equipment. At its core, MGE's software merely acts as the means to access and control the MGE UPS equipment to view internal scientific readings on the UPS unit and to achieve particular results. MGE's software collects data from inside the UPS unit, and then displays that data on a laptop computer connected to the UPS unit

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 44

290686.1

by a field service engineer. In addition, it allows the engineer to adjust the UPS unit's settings so that it can be operated at optimum levels.

Ultimately, MGE's software only performs two functions: (1) it displays scientific facts generated by the UPS equipment,[8] and (2) it allows the field service engineer to adjust or control settings on the machine to achieve a particular result. These are the same functions a field engineer could perform manually using old analog gauges and calibration dials before MGE began equipping its newer model MGE UPS equipment with its lockout software. As MGE's former director of customer support service, Steve Evans, testified, MGE's software now performs the same function that was performed using a potentiometer (or mini-screwdriver). According to Mr. Evans, the software was just a "tool."

A copyright cannot be issued for a potentiometer (or mini-screwdriver); nor can a copyright cover the function a screwdriver performs. Because MGE's software is simply a functional "tool" to operate and maintain MGE's UPS equipment, it is ineligible for copyright protection.

### 3. The Doctrines of Merger and *Scenes a Faire* Exclude MGE's Software From Copyright Protection.

Computer programs fall under the "literary works" category defined by § 102(a)(1) "to the extent that they incorporate authorship in programmer's expression of original ideas, as distinguished from ideas themselves." H.R.Rep. No. 1476, 94th Cong., 2d Sess. 54 (1976), *reprinted in* 1976 U.S. Code & Admin. News 5659, 5667. But dissecting those expressions from their subject matter has

---

[8]Of course, facts displayed on the laptop computer are not protected by copyright. *Feist Publ., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 347 (1991) (holding that "[n]o one may claim originality as to facts. . .because facts do not owe their origin to an act of authorship."); *Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1344 (5th Cir. 1994) (holding that facts are not subject to copyright protection).

proven difficult, as the Second Circuit Court of Appeals acknowledged in the landmark case of *Computer Assocs. Int'l, Inc. v. Altai, Inc.*: "The essentially utilitarian nature of a computer program further complicates the task of distilling its idea from its expression. . . . [C]ompared to aesthetic works, computer programs hover even more closely to the elusive boundary line described in § 102(b)." 982 F.2d at 704. MGE's software clearly crosses that boundary line because its software is entirely functional and an essential method of operating and maintaining MGE's UPS equipment.

In ascertaining this "elusive boundary line" between idea and communication — or process and non-functional expression — courts have looked to two settled doctrines in copyright law: merger and *scenes a faire*. *Lexmark*, 387 F.3d at 535. Merger occurs where there is only one way, or very few ways, of expressing the idea, such that the expression is essential to the statement of the idea and the two elements will have "merged" into one. *Warren Publ'g, Inc. v. Microdos Data Corp.*, 115 F.3d 1509, 1519 n. 27 (11th Cir.1997); *CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reports, Inc.*, 44 F.3d 61, 68 (2nd Cir.1994). If the idea and the expression of the idea are "merged," copyright protection does not exist because granting protection to the expressive component of the work necessarily would extend protection to the work's noncopyrightable ideas as well. *Lexmark*, 387 F.3d at 535. With respect to computer programs, "if the patentable process is embodied inextricably in the line-by-line instructions of the computer program, [ ] then the process merges with the expression and precludes copyright protection." *Atari Games Corp. v. Nintendo of America, Inc. (Atari I)*, 975 F.2d 832, 839-40 (Fed. Cir. 1992). Thus, "[w]hile, hypothetically, there might be a myriad of ways in which a programmer may effectuate certain functions within a program, – *i.e.*, express the idea embodied in a given subroutine – efficiency concerns may so narrow the practical

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 46

290686.1

range of choice as to make only one or two forms of expression workable options . . ." such that the entire structure is not capable of being copyrighted. *Altai*, 982 F.2d at 708.

For similar reasons, when external factors constrain the choice of expression, the doctrine of *scenes a faire* precludes copyright protection. *Eng'g Dynamics,* 26 F.3d at 1344. In the literary setting, the doctrine means that certain phrases that are "standard, stock, . . . or that necessarily follow from a common theme or setting" may not obtain copyright protection. *Gates*, 9 F.3d at 838. In the computer-software context, it means that the elements of a program dictated by practical realities — by hardware standards and mechanical specifications, software standards and compatibility requirements, computer manufacturer design standards, target industry practices, and standard computer programming practices — may not obtain protection. *Id.*

The Sixth Circuit Court of Appeals relied on both doctrines to deny copyright protection in *Lexmark*, a case that bears strong factual similarity to the present litigation. 387 F.3d at 536. In denying copyright protection to Lexmark's software, the Sixth Circuit noted that "'lock-out' codes fall on the functional-idea rather than the original-expression side of the copyright line." *Id.* The court held that "[t]o the extent compatibility requires that a particular code sequence be included in the component device to permit its use, the merger and scenes a faire doctrines generally preclude the code sequence from obtaining copyright protection." *Id.* (citations omitted). The court went on to hold that because the evidence indicated that it would be "computationally impossible" to modify the secret handshake sequence without copying a significant portion of the Toner Loading Program, the software imposed a compatibility constraint that justified SCC's copying of the program. *Id.* at 542; *see, e.g., Atari*, 1993 WL 207548 at *1 ("Program code that is strictly necessary to achieve

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 47

290686.1

current compatibility presents a merger problem, almost by definition, and is thus excluded from the scope of any copyright.").

MGE's software is no different from that analyzed by the Sixth Circuit in *Lexmark*. At its heart, MGE's software is entirely functional in nature. Furthermore, the MGE software's source code is fundamentally dictated and constrained by external factors (i.e., the hardware and firmware inside MGE's UPS equipment the software is designed to communicate with) such that the idea behind the software and that idea's expression are inseparable. As GE/PMI's expert Dr. Kelly, MGE's experts Pooch and Marti, and MGE's software engineers Christian Corsin and Stephane Curcio all agreed, MGE's software is constrained by the design, organization, architecture, and functionality of MGE's UPS equipment. As each testified, MGE's software is constrained and dictated by the UPS's firmware, the JBUS driver, the high screen driver, and other external constraints.

In sum, there is no creative expression in MGE software because everything MGE's software does is driven by the requirements or needs of the MGE UPS equipment. Because external factors created by the UPS equipment itself fundamentally constrain and dictate the choice of expression in MGE's software such that there was only one way in which to accomplish the software's aim (i.e., the idea), the expression (the source code) merged with the idea and is therefore noncopyrightable.

### 4.   MGE's Software Contains No Trace of Originality.

"Originality" under section 102(a) of the Copyright Act requires that the work be independently created by the author and that it possess a minimum degree of creativity. *Feist*, 499 U.S. at 361. MGE has failed to prove any original expressive content in the selection, sequence or

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 48

290686.1

coordination of the scientific facts that are displayed on the laptop computer. In *Altai*, the First Circuit admonished that "[t]he interest of the Copyright Law is not in simply conferring a monopoly on industrious persons, but in advancing the public welfare through rewarding artistic creativity, in a manner that permits the free use and development of non-protectable ideas and processes." 982 F.2d at 711. Recently, the Supreme Court emphatically reaffirmed that principle holding that the primary objective of copyright is to "reward [] originality, not effort." *Feist*, 499 U.S. at 364. Indeed, substantial effort alone cannot confer copyright status on an otherwise uncopyrightable work. *Altai*, 982 F.2d at 711. Instead, the ultimate goal is "to stimulate artistic creativity for the general public good. . . ." *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975). Of course, the main purpose of MGE's software is "not to be admired as a work of literary or pictorial art." *Lotus*, 49 F.3d at 821 (Boudin, J. concurring). It is a "tool" to access scientific facts inside MGE's UPS equipment and to transmit directions by a field service engineer using a laptop connected to the UPS equipment in order to operate that equipment.

MGE's software screens lack any creativity and consist of thoroughly standardized screens displaying a representation of (uncopyrightable ) "facts" contained inside MGE's UPS equipment. As MGE's witnesses admitted, MGE's software is a "meter reader" for scientific facts found inside the UPS. "No matter how original the format, however, the facts themselves do not become original through association . . . . This inevitably means the copyright in a factual compilation is thin." *Feist*, 499 U.S. at 349. MGE has selected certain scientific facts and allowed that information to be arranged on a screen in a way that is not particularly unique or original. The presentation of this data does not provide the field service engineer with a method or systematic procedure of accessing the

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 49

290686.1

(uncopyrightable) facts.   Instead, MGE's display or user interface for its software is simply a

compilation of raw data and a method of changing settings on the UPS equipment, which is dictated

solely by efficiency.  In other words, there is no unique or creative way this data is displayed using

MGE's software.

In *Feist*, the Supreme Court held that an alphabetically arranged phonebook lacked creativity

and originality necessary to sustain a copyright claim. 499 U.S. at 363.  Likewise, in *Donald v. Zack*

*Meyer's T.V. Sales & Serv.*, 426 F.2d 1027, 1031 (5th Cir. 1970), the Fifth Circuit held that boiler

plate contractual language printed on a blank form was insufficiently original to permit copyright

protection.  Like *Feist* and *Zack Meyers*, MGE's software does not possess even a *de minimis* level

of creativity and does not contain sufficient choice and selection to qualify for copyright protection.

The opportunities for original authorship within the constraints of the firmware residing on MGE's

UPS equipment are too restricted to merit copyright status.   There is no creative expression in

software because it is all dictated by the microprocessors inside the MGE UPS equipment.  Each

screen within MGE's software is accessed by very simplistic keystrokes (i.e. pressing one of the F

(function) buttons).  However, use of simple keystrokes and other similar, common interfaces are

not copyrightable because their use is unoriginal, not expressive or thoroughly standardized.  *See*

*Lotus Dev. Corp. v. Paperback Software Int'l*, 740 F. Supp. 37, 78 (D. Mass. 1990); *see also Brown*

*Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1473 (9th Cir. 1992) (affirming the district court's

finding that "'[p]laintiffs may not claim copyright protection of an . . . expression that is, if not

standard, then commonplace in the computer software industry.'").

In short, there is overwhelming evidence that the end product of MGE's software is an

ordinary "garden-variety" display of scientific facts and only serves as a procedure, process, system, or method of operation for MGE's UPS equipment. Because MGE's software does not qualify for copyright protection, GE/PMI is entitled for judgment as a matter of law.

## G.     MGE Cannot Recover on Its Misappropriation of Trade Secrets Claim.

### 1.     MGE's Misappropriation of Trade Secrets Claim Fails Because MGE Failed to Keep its Trade Secrets Secret.

MGE cannot prove that any of its alleged trade secrets were misappropriated. Under Texas law, misappropriation of trade secrets requires proof that: (1) a trade secret existed on MGE's Data Disk; (2) GE/PMI acquired the trade secret by improper means; (3) GE/PMI used the secret information without authorization from MGE; and (4) MGE suffered damages as a direct and proximate result of Defendants' use of MGE's trade secrets, if any, contained on its Data Disk. *Taco Cabana Int'l, Inc.*, 932 F.2d at 1123.

To qualify as a trade secret, the subject matter must, of course, be secret and must not be public knowledge in the trade or business. *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 475 (1974); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984); *Metallurgical Indus., Inc. v. Fourtek, Inc.*, 790 F.2d 1195, 1199 (5th Cir. 1986). Matters of general knowledge in the UPS industry cannot be a trade secret. *Kewanee*, 416 U.S. at 475; *Ruckelshaus*, 467 U.S. at 1002; *Fourtek*, 790 F.2d at 1199. Matters which are completely disclosed by MGE's UPS equipment cannot be a trade secret. *Wissman v. Boucher*, 240 S.W.2d 278, 280 (Tex. 1951). In other words, information that is generally known in the industry, readily ascertainable by inspection or independent investigation of MGE's UPS equipment, or publicly disclosed is not a trade secret. *See*

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 51

290686.1

*E.I. de Pont deNemours & Co. v. Christopher*, 431 F.2d 1012, 1015-1016 (5th Cir. 1970).

MGE's software and Data Disk do not satisfy the definition of a "trade secret" entitling them to protection because MGE failed to take reasonable steps to maintain their secrecy. Instead of keeping its secrets secret, MGE, through its own carelessness, allowed this information to be placed in the public domain. MGE delivered to PMI software in April 2000 without any confidentiality or licensing agreement. MGE's trainer, David Siegler, admitted he provided PMI employees hard copies of its confidential technical documentation for its three-phase equipment. Additionally, MGE routinely gave away its software and Data Disk to various governmental entities and large multi-national companies and others – including the City of Los Angeles, America On Line, Dan-U-Tech, Intel, Sprint, SPE, El Salvador, Equador Guoyoquil, United States Air Force, RL Mark, Integra Health, Editel, Sistema Ininterrumpido, Tau Energra, Sistema Aplicaciones, GTE Data Services, Verizon, Newtech Electric, Powerlogic, and Unisys Chili – without ever getting a signed secrecy agreement from any of them. MGE officials knew they had released this information. MGE's former director of service, Rod Saunders, admitted that MGE had 20 unsigned secrecy agreements, and he wrote in emails that "[w]e believe it [the trade secrets] is not being kept secure." Others at MGE raised alarms that "there are still holes in the system" and that "with the absence of any formal policy/procedure from MGE, the software will still leak out of the holes." (DX-127). It did more than "leak out the holes." MGE knowingly and deliberately released its software and Data Disk unrestricted into the public domain.

To make matters worse, MGE lost 51 of its dongles, the devices MGE used to prevent others from using the software without authorization. Of those dongles it could account for, Paul Marchand

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 52

290686.1

estimated that passwords were written on the outside of 5% to 10% of them. Further, the evidence showed that MGE's dongles were often taped inside the cabinet doors of UPS units because MGE had provided these dongles to its customers for the convenience of its field service engineers.

The Fifth Circuit acknowledged that "[i]t is not improper to obtain knowledge of a trade secret where the owner of the alleged trade secret voluntarily discloses it or fails to take reasonable precautions to ensure its secrecy." *Interox Am. v. PPG Indus., Inc.* 736 F.2d. 194, 202 (5th Cir. 1984). This precisely what has occurred in this case. MGE has failed to prove that either its software or data disks constitute a trade secret because MGE provided unrestricted access to its dozens of customers, independent contractors, and others without any confidentiality agreements whatsoever or take any "reasonable precautions to ensure its secrecy."

Any proprietary rights MGE may have had in its software or Data Disk were extinguished when MGE revealed its alleged trade secrets to third parties without requiring those parties to keep that information secret. As the United States Supreme Court explained, once a trade secret is disclosed to "others who are under no obligation to protect the confidentiality of the information, or [is] otherwise publicly disclose[d] . . . [the] proprietary right is extinguished." *Ruckelshaus*, 467 U.S. at 1002; *see also Kewanee Oil*, 416 U.S. at 475 ("The subject of a trade secret must be secret, and must not be of public knowledge or of a general knowledge in the trade or business."); *Taco Cabana Int'l, Inc.*, 932 F.2d at 1123 ("The owner of the secret must do something to protect himself. He will lose his secret by its disclosure unless it is done in some manner by which he creates a duty and places it on the other party not to further disclose or use it in violation of that duty."); *Wissman v. Boucher*, 240 S.W.2d 278, 280 (Tex. 1951) (holding that "exposure of the device to the public by

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 53

290686.1

advertisement or sale definitely operates to destroy any legal protection the claimed originator might

otherwise assert on the basis of a trade secret"). "[F]ail[ing] to require third parties to enter into a

confidential agreement to protect alleged trade secrets is one sure way to waive any trade secret

protection that may have existed." *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 274 F. Supp. 2d 880, 891

(E.D. Ky. 2003) (collecting cases). That is precisely what happened in this case. MGE's

misappropriation of trade secrets claim fails because MGE did not maintain the secrecy of its alleged

trade secrets. Therefore, GE is entitled to judgment as a matter of law on this basis alone.

### 2. MGE's Trade Secrets Claim Fails Because MGE Failed to Produce Sufficient Evidence that GE/PMI Acquired any Trade Secrets by Improper Means.

MGE must also prove that Defendants acquired their trade secret by improper means to

prevail on its trade secrets claim. *Taco Cabana Int'l, Inc.*, 932 F.2d at 1123. A person discovers

another's trade secret through "improper means" when he acts below the generally accepted

standards of commercial morality and reasonable conduct. *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166

F.3d 772, 778, 785 (5th Cir. 1999). To discover a trade secret by "improper means" requires that

the Defendants have notice of both (1) the fact the information is a trade secret, and (2) that the

disclosure by the third person to the defendant was in violation of a confidential or contractual

relationship that person had with MGE. *See Metallurgical Indus., Inc. v. Fourtek, Inc.*, 790 F.2d

1195, 1204 (5th Cir. 1986).

MGE, however, has failed to introduce any evidence GE/PMI had actual notice that any

information on the Data Disk or software was a trade secret or that disclosure of the information to

GE/PMI was in violation of a confidential or contractual relationship that person had with MGE.

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 54

290686.1

Therefore, there is no legally sufficient evidence to support this element of MGE's misappropriation claim.

**H.     MGE's Claim For Unfair Competition for Misappropriation of MGE's Software is Preempted by the Copyright Act.**

MGE cannot recover for unfair competition without showing some illegal conduct by the Defendants which interfered with the Plaintiff's ability to conduct its business. *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000).   To recover for its unfair competition claim, MGE must prove each of the following elements:

> (i) the creation by plaintiff of a product through extensive time, labor, skill and money; (ii) the **use** of that product by defendant in competition with plaintiff, thereby giving the defendant a special competitive advantage because he was burdened with little or none of the expense incurred by plaintiff in the creation of the product; and (iii) commercial damage to plaintiff.

*Alcatel USA, Inc.,* 166 F.3d at 788) (citing *U.S. Sporting Prods. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217-18 (Tex. App.—Waco 1993, writ denied)) (emphasis added).  This cause of action, also known as common law misappropriation of trade secrets,[9] is excluded, however, if it 1) falls within the subject matter of copyright law and 2) "if the right that the author seeks to protect . . . [is] *equivalent* to any of the exclusive rights within the general scope of copyright . . . ." *Alcatel,* 166 F.3d at 785-86 (emphasis in original); *see also Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003).  The rights are equivalent if the acts the plaintiff complains would violate both unfair competition law and copyright law—i.e., no "qualitatively different elements are required to

---

[9]*See, e.g.*, James E. Hudson, *A Survey of Texas Unfair Competition–Tort of Common Law Misappropriation*, 50 Baylor L. Rev. 921, 924 (1998) (distinguishing between three branches of unfair competition: palming off, trade-secret misappropriation, and common law misappropriation).

**DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y**                                                        **PAGE 55**

290686.1

constitute the state-created cause of action being asserted . . . ." *Alcatel*, 166 F.3d at 787. When the act that forms the basis of the misappropriation claim touch on interests protected by the Copyright Act, this element is met. *Id.* at 789. Because both MGE's copyright infringement and unfair business claims require the "use" of MGE's software, MGE's unfair competition claim for misappropriation of the software is preempted by copyright law. *See, e.g., id.* (holding that the district court erred in denying defendants' joint motion in limine on plaintiff's claims of misappropriation of trade secrets in its software and its firmware as those claims were preempted by copyright law); *see also Aldridge v. The Gap, Inc.*, 866 F.Supp. 312, 314-15 (N.D. Tex. 1994) (finding plaintiff's claim that clothing retailer sold her children's clothing designs without her consent preempted); *Synercom Tech., Inc. v. Univ. Computing Co.*, 474 F. Supp. 37, 38-39 (N.D. Tex. 1979) (preempting plaintiff's claims of misappropriation of its computer formats, instruction manuals, and other services).

## VI.  MOTION FOR NEW TRIAL

In the alternative, based on the grounds set forth above, GE/PMI moves for a new trial.

## VII.  CONCLUSION

For the reasons stated, GE/PMI respectfully request that the Court grant its motion for judgment as a matter of law and enter a take-nothing judgment in favor of GE/PMI or in the alternative, grant GE/PMI's motion for new trial. and enter such other and further relief to which GE/PMI may be justly be entitled.

Respectfully submitted,


/s/*Joseph F. Cleveland, Jr.*
Joseph F. Cleveland, Jr.
State Bar No. 04378900
Richard H. Gateley
Texas State Bar No. 07752500
J. Heath Coffman
Texas State Bar No. 24059591

BRACKETT & ELLIS
A Professional Corporation
100 Main Street
Fort Worth, TX  76102-3090
Telephone: 817/338-1700
Facsimile:  817/870-2265

ATTORNEYS FOR DEFENDANTS
POWER MAINTENANCE INTERNATIONAL, INC.
AND GENERAL ELECTRIC COMPANY

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 57

290686.1

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2008, I electronically filed the foregoing document with the Clerk of Court for the U. S. District Court, Northern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Mr. Stephen A. Kennedy
Mr. Zachary M. Groover
The Law Offices of Stephen A. Kennedy, P.C.
1700 Pacific Ave., Suite 1280
Dallas, TX 75201

Bryan L. Sample
BRYAN L. SAMPLE, P.C.
660 Preston Forest Center, Suite 106
Dallas, Texas 75230
Telephone: (214) 356-1219
E-mail: BryanLSamplePC@aol.com

Mr. Jeffrey L. Cureton
Cureton & Gordon, LLP
101 Summit Avenue, Suite 610
Fort Worth, TX 76102


\s\ *Joseph F. Cleveland, Jr.*
Joseph F. Cleveland, Jr.

DEFENDANTS POWER MAINTENANCE INTERNATIONAL, INC. AND GENERAL ELECTRIC COMPANY'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR
NEW TRIAL AND BRIEF IN SUPPORT
CASE NO. 4:04-CV-929-Y

PAGE 58

290686.1